**STATE of Missouri, (Plaintiff) Respondent,**

v.

**Roger Lee MILLER, (Defendant) Appellant.**

**No. 56715.**

Supreme Court of Missouri, Division No. 1.

Oct. 9, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Lewis F. Randolph, Jr., St. Joseph, for appellant.

KEITH P. BONDURANT, Special Judge.

Roger Miller was convicted of burglary second degree and sentenced to five years' imprisonment. Since the trial, sentencing and appeal occurred prior to January 1, 1972, this court has jurisdiction under Art. V, § 3, of the Missouri Constitution as amended in 1970, V.A.M.S.

At 3:15 on the morning of March 15, 1969, Alvin Balchen, from his second floor apartment in a building directly across the street from and overlooking the Masonic Temple in St. Joseph, observed four men in the alley to the east of the Temple and in front of that building. Lights on the building and a street light in the alley revealed two men in front of the building and two in the alley. One man was at the front of the building kicking in the door and Mr. Balchen called the police. He could not see the faces of any of the men but stated at trial that one of the men was similar in build and stature to defendant. Shortly after observing the kicking in of the door and calling the police, Balchen observed the four men run east and out of his vision on Robidoux Street. A few minutes later he heard an automobile start with a loud "putt-putt" sound, and observed a car having a "light-colored canvas top with long fins," a dark-colored bottom, "an old sports model," heading west on Robidoux Street. The car turned north onto Sixth Street. At trial he identified a photograph of defendant's automobile as looking exactly like the car he saw. Police officers were dispatched to the Temple, where they found the tell-tale marks of burglarious entry.

At 3:37 a. m., Detective Bernard Brown, in response to a radio communication, proceeded to the Masonic Temple, found the south door had been pried open, found the lock on the floor inside the building, and saw that the combination to the first floor safe had been knocked off and the door to the safe was open. On the second floor, the combination to a safe had been knocked off and the hasps had been pried off a row of doors. Lockers and desk drawers had been opened and rifled.

Officer William Linder, a police veteran of eight years service, was on patrol duty in the early hours of March 15, 1969. Between 3:30 and 3:40 a. m., he received a radio dispatch in his patrol car that a door was standing open at the Masonic Temple. At that time he was within 12 to 15 blocks of the Temple and immediately proceeded toward the building. At about 3:39 a. m., on his way to the Temple, he saw and passed a 1960 Ford convertible, white top and dark bottom, proceeding east in the 600 block on Charles Street. He recognized the car as one belonging to defendant Roger Miller, and at that time observed Miller as the driver, with three passengers in the car. Officer Linder was aware that Roger Miller's driving license had been revoked. He turned his patrol car around and pursued and stopped the vehicle after it had turned south onto Eighth Street. At the time he stopped the car Michael Heitman was the driver and Roger Miller was seated next to him in the front seat. The other occupants of the car were Leroy Dykes and Ernie Clark. Linder knew all of the occupants of the automobile. Officer Linder stated that his primary purpose in stopping the car was because he recognized the defendant Roger Miller as the driver on the first passing and had knowl-

edge that his license had been suspended. At the time he stopped the vehicle, however, he had received a prior report that there was a door standing open at the Masonic Temple and as he was stopping the defendant's car he received a radio dispatch concerning a break-in at Sixth and Robidoux, the Masonic Temple.

As Officer Linder started to get out of his patrol car, Officer Boyd in another patrol car pulled up behind Linder's car. As Linder walked up along the right-hand side of Roger Miller's Ford, he observed the occupants of the rear seat scurrying about in attempts to conceal tools and other objects under the front seat. He shined his light into the Ford and saw an assortment of tools, pry bars, sledge hammer, punches and screw driver on the floor. At that time the four individuals in the Ford were placed under arrest for investigation of burglary. The four men were then asked to get out of the car. Officer Linder, assisted by Officer Boyd, then searched the interior of the car. In addition to the various tools lying in plain view on the floor between the front and back seats, three sets of cloth gloves were found lying on the front seat, a flashlight and an opened package of Kool cigarettes were in the glove compartment on the passenger side, and a magnetic flashlight was up over the sun visor.

The Masonic Temple's custodian on March 15, 1969, and for 13 years prior thereto, was George K. Jackson. He had left the building at 11:00 p. m., on March 14, 1969, locking all the doors and noting nothing unusual about the condition of the two vaults. He had locked his desk on the first floor of the building before leaving. In it were a package of Kool cigarettes and a flashlight. Mr. Jackson returned to the Masonic Temple at 4:00 a. m., on March 15, 1969, on being apprised of the break-in. He discovered that his own locked desk had been sprung and that a flashlight and his cigarettes were missing. Mr. Jackson identified the flashlight and the package of

Kool cigarettes taken from defendant's car and introduced in evidence as the same items which had been in and were missing from his desk. He was able to identify the cigarette package by the distinctive manner in which he opens a pack by slitting just the corner and identified the surgeon-like incision on the State's exhibit (the Kool cigarette package) as being his own handiwork.

Appellant by his own testimony admits to being in the car in question, owned by him, from approximately 3:00 a. m., on March 15, 1969, in the company of Heitman, Dykes, and Clark, with whom he was previously acquainted. Mrs. Shirley Miller, defendant's wife, testified defendant left the apartment in which she was baby sitting at about 3:00 a. m. on that date in an automobile driven by Mr. Heitman which resembled the automobile pictured by the State's exhibit, which was testified to by Linder as the Ford convertible stopped and searched.

Appellant cites 14 grounds of alleged error, one of which he has abandoned. Four of these, Points 5, 6, 7, and 8, involve his contention, based upon his claim of illegal search and seizure, that his motion to suppress various items obtained pursuant to search of his automobile should have been sustained. Appellant's first and second claims of error allege insufficiency of evidence and failure to establish constructive possession of alleged stolen property, while his third assignment claims insufficient circumstantial evidence to submit to a jury. Point 4 claims error in admission of evidence regarding the condition of the clothing of other men in the automobile who were also arrested with defendant. Points 9, 10, and 14 relate to instructions and the form of the verdict. Points 11 and 12 claim error in not permitting a State's witness to be asked if he were a practicing homosexual and in permitting the prosecuting attorney to comment on such refusal in closing argument. Point 13, concerning a jury instruction, has been abandoned.

■ We find the stopping, search and seizure of the vehicle were lawful, based on probable cause and incident to a valid arrest. In the hearing on defendant's motion to suppress, and later at trial, Officer Linder testified that before arresting defendant Miller and his three companions, he had heard police dispatcher's report of a break-in at the Masonic Temple, as well as a description of a car seen fleeing that location. He was on his way to the Masonic Temple when he first passed the car which he recognized as belonging to defendant, and at that time observed the defendant driving with three other passengers. Although his primary initial purpose in pursuing the automobile was to apprehend defendant for driving while his driving license was under suspension, he was alerted immediately before and during such pursuit to the fact of a break-in and a description of a fleeing automobile. Officer Linder's observation of one of the passengers trying to put objects under the front seat and his recognition of the objects as burglar tools, coupled with his knowledge of a break-in in the immediate vicinity only moments earlier, clearly constitute probable cause for both arrest and search. Such a set of facts would justify the search without regard to the cause of the stopping. Appellant, however, was arrested for probable cause and the search which occurred subsequently produced instrumentalities and fruits of the crime introduced as State's exhibits.

"The existence of 'probable cause,' justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." 5 Am.Jur.2d, Arrest, § 48, p. 740, as quoted in State v. Seymour, Mo. Sup., 438 S.W.2d 161, 163. In Seymour the defendant was arrested when driving an automobile with a burglary suspect some time after the burglary had been reported and some distance away merely because defendant was in company of a suspect. Here

the appellant was arrested within minutes after the burglary had been reported, within a few blocks of the scene of the crime and with burglary tools in view in the vehicle.

In State v. Witherspoon, Mo.Sup., 460 S.W.2d 281, there was no evidence of even a suspicion of the officer's prior knowledge of burglary tools hidden in the car. In the case at bar, the officer saw the tools before the arrest and incidental search. The suspicious conduct is similar to State v. Schleicher, Mo.Sup., 458 S.W.2d 351.

Identical facts, arising out of the same incident and involving a companion of appellant Michael Heitman who was arrested with appellant, were considered by this court and found sufficient to justify arrest, search, and submission of evidence obtained by search in State v. Heitman, Mo. Sup., 473 S.W.2d 722. The trial court did not err in overruling defendant's motions to suppress.

■ A submissible circumstantial evidence case was made and the court did not err in overruling defendant's motion for acquittal. Very similar, and in many points identical, circumstantial evidence was adduced in State v. Heitman, supra, involving the same break-in, the same automobile, and the same burglar tools and other articles. In Heitman, as in the case at bar, appellant argued that there is no evidence that he was at the scene of the burglary, no evidence that the articles taken from the automobile were in his possession or were connected to him in any way, and no evidence of a conspiracy between him and any one or more of the other three persons arrested. Here, as in Heitman, supra, defendant argues that his mere presence seven blocks from the scene of the burglary is not sufficient to justify his conviction of burglary, second degree. We ruled these points against the defendant in State v. Heitman, Mo.Sup., 473 S.W.2d 722, 1. c. 726–727, and adopt the same conclusions here, as follows:

■ The circumstances allow the inference that appellant burglarized the Temple.

It is inferable that the four fleeing males were the ones who committed the burglary and that the 1960 Ford convertible was the "getaway" car used by them. Having been found in that car in which three other males, numerous burglar tools, and distinctive articles identified by their owner and thus exposed as fruits of the crime were found, appellant is directly connected with the burglary. His possession of property stolen in a burglary is evidence of guilt connecting him with the commission of the burglary. The possession was recent, personal, exclusive, distinct and conscious, and unexplained, meeting all the tests set forth in State v. Watson, Mo.Sup., 350 S.W.2d 763. The requirement of exclusivity does not necessarily mean possession separate from all others. "The possession of recently stolen property which will support an inference of guilt may be a joint possession of the accused and others and such possession need not be separated from all possession by others." State v. Cobb, Mo.Sup., en Banc, 444 S.W.2d 408, 412 [5].

■ We adopt verbatim on appellant's claim that the cigarettes, flashlight, gloves and other articles could not be attributed to his possession our conclusion in State v. Heitman, Mo.Sup., 473 S.W.2d 722, 726–727: "We need not dwell on the nice distinctions between the character of appellant's possession of these articles as contrasted with the possession attributable to the other three occupants of the convertible. One or more of the four obviously was in the personal, distinct and conscious possession of recently stolen goods and in view of the evidence of joint commission of the burglary it is immaterial which one had possession. The possession of one was the possession of all and the knowledge of one was the knowledge of all, in the eyes of the law, under the circumstances of this case of joint possession."

Under State v. Cobb, supra, joint possession of property by two or more persons acting in concert, supplemented with other facts connecting them with the crime, is sufficient to support the inference of guilt.

In addition to all the other facts heretofore related, the witness Alvin Balchen stated that one of the men he sighted around the Temple was "similar to that Roger Miller," and also stated that the car he saw speeding from the Temple was exactly like the one in which appellant was apprehended.

The facts and circumstances of record do more than raise a mere suspicion that defendant is guilty as charged. They exclude every reasonable hypothesis of innocence. "The facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence." State v. Walker, Mo.Sup., 365 S.W.2d 597, 601. State v. Allen, Mo.Sup., 420 S.W.2d 330, adds that other corroborating circumstances are required. In the instant case, these corroborating circumstances form a strong continuous chain of circumstantial evidence.

■ Appellant complains of the admission of evidence concerning the condition of the clothes of the other passengers of the vehicle. Since the evidence consistently and repeatedly showed the break-in by four men, the flight by four men, the apprehension and arrest of four men, the joint possession of fruits of the crime by four men, any additional evidence which would link any one of the men with the crime scene would raise a strong inference that the other men were in complicity. This evidence was admissible at least to show knowledge on the part of appellant and also further to establish his complicity in the crime. The jury was sufficiently made aware of the fact that no mortar particles were found on the clothing of Roger Miller himself.

■ On cross-examination of the witness Balchen, appellant's attorney attempted to ask the following question: "You are a practicing homosexual * * *?" The

prosecutor made timely objection to the question, which was sustained by the trial court. Appellant claims the question was proper as an attempt to impeach the credibility of the witness. In view of § 563.230, RSMo 1969, V.A.M.S., making the practice of homosexuality, "the abominable and detestable crime against nature," a crime, the prosecution was under a duty to object to this question if for no other reason than to request the court to make the witness aware of his right against self-incrimination. The rule of Chism v. Cowan, Mo.Sup., 425 S.W.2d 942, excepts answers which might expose the witness to a criminal charge. (There was no claim of a conviction, which of course could have been shown for impeachment purposes.) Appellant contends that this law (§ 563.230) is currently not enforced against consenting adults. Nonetheless, it is still a felony in Missouri.

■ Moreover, despite the holding in the old case of Muller v. St. Louis Hospital Ass'n, 73 Mo. 242, that a witness may be asked any questions which tend to test his credibility or to shake his credence by injuring his character, however irrelevant to the facts in issue and however disgraceful the answer may be to himself, excepting where the answer might expose him to a criminal charge, the answer still must affect his credibility. It is difficult to see what the practice of homosexuality has to do with credibility of a witness in a case of this kind. The trial judge is vested with great discretion in determining whether a question of this nature, however it might be answered, would tend to impeach the credibility of a witness in the particular case being heard. We believe the trial judge could properly have sustained objection to the question on the basis that it had no bearing on the witness's credibility in this case regardless of the possibility of self-incrimination.

■ In closing argument, the prosecutor stated, "Talk about pulling out all the stops. You will recall Mr. Balchen. Mr. Randolph pulled out all the stops. He said 'homosexual.' My God, what does that have to do with this case? They are grasping at straws." The prosecutor's remark was not a comment on the evidence, since the trial judge had properly kept the question out of evidence; it was a comment on the tactics of defense counsel. This has been held not improper when referring directly to the type of case presented by defense. State v. Allen, Mo.Sup., 420 S.W.2d 330. Nor does it violate Supreme Court Rule 26.08, V.A.M.R., as suggested by appellant. This court in State v. Shields, Mo. Sup., 391 S.W.2d 909, stated that S.Ct. Rule 26.08 should not be construed in other than its express terms (prohibiting comment on failure of a defendant or his spouse to testify). State v. Hale, Mo.Sup., 371 S.W.2d 249, 256, cited by appellant, is likewise not in point, since the prosecutor made no attempt in final argument to refer to points upon which the State relied which were not previously presented, as in *Hale*. Nonetheless, we believe that since the question and any answer thereto had been withdrawn from the case, it was improper for the prosecutor to refer to the matter at all and the jury should have been instructed to disregard the prosecutor's comment. However, the prosecutor's comment was in no way prejudicial to the defendant. It could have been made had defendant's counsel been permitted to question about homosexuality.

■ Finally, defendant complains of Instruction No. 6 on the grounds that it fails to define the crime of burglary in the second degree, and that it assumes facts not in evidence, namely, that defendant was at the scene of the alleged crime and knowingly acted in concert with other persons. This identical instruction was given and complained of on the same grounds in State v. Heitman, supra. As this court stated in that case, 473 S.W.2d 722, 728: "The instruction in plain and unmistakable language authorized a verdict of guilt upon the finding of the necessary facts constituting burglary in the second degree. No request was made for an instruction defining 'burglary in the second degree.' * * * We

have read the instruction carefully and do not find it subject to the criticism that it assumes facts. On the contrary, it requires the jury to find beyond a reasonable doubt each of the several facts hypothesized in the instruction."

Appellant's last assignment of error is that the verdict of the jury was not in the form required. No authority is cited. The finding of the jury was clear on its face and any procedural defect involved is in no way prejudicial to the appellant. No mandate is given to the jury to return a verdict in the exact form indicated in the instruction.

The judgment is affirmed.

HOLMAN, P. J., and BARDGETT, J., concur.

SEILER, J., not sitting.