STATE of Missouri, Plaintiff-Respondent,

v.

Randel Ray CLEVELAND, Defendant-Appellant.

No. KCD 30222.

Missouri Court of Appeals, Western District.

June 11, 1979.

this same school area, as pointed out in *Haymart v. Freiberger, supra.*

Jerry V. Venters, Jefferson City, for defendant-appellant.

John Ashcroft, Atty. Gen., Bruce E. Anderson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

A jury convicted Randel Ray Cleveland of felony-murder. He was duly sentenced in accordance with the verdict to life imprisonment by the Department of Correc-

tions. He appeals to this court. We reverse and remand for reasons hereafter explained.

According to the state's evidence, defendant was the driver of the escape car used in the June 12, 1977, robbery of a liquor store in Jefferson City, during the course of which one Lawrence Micke, the proprietor of the store, was killed.

The principal in the robbery and murder was Lee Roy Shockley who entered the store and undertook to rob Micke and his son, Keith Lawrence Micke, at gunpoint. Shockley began firing when the elder Micke struck him in the head with a bottle of whiskey. Micke was fatally wounded.

Defendant, testifying in his own behalf, denied participation in the robbery. He called Shockley as a witness, who testified that it was not defendant who was the driver of the car for the Warehouse Liquors robbery, but another friend of his, by the name of "Dave". Shockley admitted his role in the robbery and murder. He had been convicted of the offense and was in prison at the time of trial.

Other facts will appear in the course of the opinion.

*Cross-examination of defendant about prior criminal acts of which he had not been convicted.*

Defendant on cross-examination admitted prior convictions for burglary, forgery and escape. He was then asked about the following other crimes of which he had not been convicted:

1. ". . . You and Mr. Shockley both escaped from [Kettle Marine Correctional Institute in Plymouth, Wisconsin] about the 26th of May . . . 1977?" After an objection was overruled, defendant admitted the escape.

2. ". . . Is it not a fact that you committed the armed robbery at a Mill Street Market in Festus-Crystal City area on May 30, 1977?" Defendant admitted he had done so, and, in response to other questions, that he had done so in concert with Lee Roy Shockley.

(Proof of the same two crimes was later made by cross-examination of defendant's witness, Lee Roy Shockley—of which more later.)

Defendant was then asked about two robberies in Jefferson City—one at the Seven-Eleven Liquor and Sundries Store on June 3, 1977, and the other at the Apco Service Station on June 10. Defendant denied both these offenses. No objection was made to the questions about the Jefferson City robberies, and no complaint is made about them on this appeal.[1]

Defendant does complain, however, of the cross-examination of defendant and of defendant's witness, Lee Roy Shockley, about the Wisconsin prison escape and of the Festus-Crystal City robbery. The point must be sustained upon the authority of *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979); decided during the pendency of this appeal.

The state does not contend that proof of the crimes inquired about was admissible to prove defendant's guilt of the instant offense. Any such argument would have been unavailing under *State v. Reed*, 447 S.W.2d 533 (Mo.1969), and *State v. Spray*, 174 Mo. 569, 74 S.W. 846, 847, *et seq.* (Mo. 1903). It claims instead that it was proper to prove such crimes by defendant's admissions upon cross-examination as affecting his *credibility as a witness*, citing *State v. Foster*, 349 S.W.2d 922, 925 (Mo.1961). It is to be noted that the subjects of the cross-examination were not criminal convictions but criminal acts of which defendant had not been convicted. There would be no question about the propriety of the former. § 491.050, RSMo 1969; *State v. Dunn, supra* at 651.

---

1. See *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979); which holds that even a *question* such as this, although answered in the negative, is impermissible and may cause a reversal upon appeal. Defendant's objection to the question would only aggravate the prejudicial effect of the question. The prosecutor should, it seems, secure a preliminary ruling by the court outside the jury's hearing before asking a doubtful question of this kind.

In *Dunn*, the defendant was being tried for stealing a motor vehicle, and on cross-examination was asked if on a certain date in St. Louis County he had stolen property from an automobile. Even though defendant answered the question in the negative, our Supreme Court held the allowance of the question was an abuse of discretion and therefore prejudicial error.

■ Under *Dunn*, the allowance of cross-examination about prior acts of crime and other misconduct, and the extent of such cross-examination, is left to the trial court's discretion. The appellate court will not interfere unless that discretion is abused. However, the trial court's discretionary latitude is greatly narrowed by the following statements in the opinion by the learned Bardgett, J.: ". . . The fact that it is the *defendant* who is being cross-examined is a factor a court can and should consider in ruling upon an impeaching question as presented here [p. 652] . . . Thus, it is seen that although a defendant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should, on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him. [p. 653] . . . Cross-examining a defendant as to alleged prior acts of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, as here, lends itself to the creation of substantial prejudice even though the answers are in the negative. The cases of *State v. Foster*[2] . . ., *State v. Williams*[3] . . ., and *State v. Summers*[4] . . ., noted in the excerpt from the court of appeals opinion, do not require a trial court to permit all cross-ex-

amination of a defendant as to prior acts of misconduct and do not preclude an appellate court from determining that the specific questioning was erroneous and constituted prejudicial error." [p. 653].

■ We will first take up the cross-examination testimony of defendant about his escape from the Wisconsin prison. Actually, *Dunn* does not directly rule this particular evidence, because the crime of escape is not *similar* to the offense of armed robbery or of felony-murder for which defendant was being tried . . . and the court noted in *Dunn*, as pointed out above, that the crime there inquired about was similar to the offense there being tried. That similarity gave even the question, let alone any admission, a particularly poisonous effect.

We do not think, though, that our Supreme Court intended to say that similarity was the only factor to be considered in allowing or excluding such evidence. The learned men who have considered the subject identify, as another limiting factor, *the relevancy of the criminal conduct to impeach the veracity* of the witness. *State v. Miller*, 485 S.W.2d 435, 441 (Mo.1972); *State v. Williams*, 492 S.W.2d 1, 7 (Mo.App. 1973); 3A Wigmore, Evidence § 982 (Chadbourne rev. 1970). By this test, evidence of escape from confinement must be ruled out, for it only indirectly and remotely bears upon one's disposition to tell the truth under oath.[5]

We hold, therefore, that the trial court exceeded its discretion in allowing cross-examination of the defendant about his escape from prison.

■ The evidence of the Festus-Crystal City robbery was of course similar to the one now on trial, right down to the point of defendant's association with Shockley. This evidence is specifically condemned by *Dunn*. Its admission was an abuse of dis-

2.  349 S.W.2d 922 (Mo.1961).

3.  492 S.W.2d 1 (Mo.App.1973).

4.  506 S.W.2d 67 (Mo.App.1974).

5.  Compare cases which hold that proof of general bad character is not admissible to impeach

a witness, but only his reputation for truth and veracity. *State v. Spencer*, 472 S.W.2d 404 (Mo.1971); *State v. Lora*, 305 S.W.2d 452, 455 (Mo.1957); *State v. Williams*, 337 Mo. 884, 87 S.W.2d 175, 180–184 (Mo. banc 1935).

cretion, to use the *Dunn* terminology, and therefore prejudicial error.

■ The mischief of evidence of prior criminal acts offered for impeachment of the defendant witness is that the jury will not confine it to its intended purpose of impeachment. They will consider it as evidence of the defendant's bad character and thus probative of guilt of the main offense. Every lawyer knows the stunning effect of evidence of the commission of prior crimes by the defendant. *State v. Lee*, 486 S.W.2d 412 (Mo.1972). (In this case, MAI–CR 3.58 was given, limiting to impeachment the purpose for which *conviction* of an offense could be considered. There is no similar instruction in MAI–CR for evidence of the *commission* of an offense, and no such instruction was given. We do not mean to say that such an instruction would have cured the error.)

■ Furthermore, proof of, or a question about another crime introduces into the case a collateral matter which will inevitably distract from the main issue in the case. Because it would be intolerably time-consuming and confusing, it is not allowable to go fully into the circumstances of the other crime. And yet is it fair only to strike the blow, "hit-and-run" fashion, and leave the wound to fester? And if time would permit, and if confusion could somehow be avoided, could the defendant be prepared to meet every accusatory question which the prosecutor might elect to ask? (Of course, if a conviction has resulted, then the matter presumably has been fully gone into and is settled.) 3A Wigmore, Evidence § 979 (Chadbourne rev. 1970).

■■ Thus *Dunn* with good reason places the prosecutor upon rather a short tether in cross-examining the defendant about the commission of unconvicted crimes. *Dunn* says the inquiry may not be made about *similar* crimes. We now add that another limiting factor upon the trial court's discretion is the *tendency of the offense to show a liar's disposition,* even though the offense inquired about may have been dissimilar to the one on trial. *Dunn* does not, however, remove the matter entirely from the trial court's discretion, and announces no rigid exclusionary rule.[6] In some cases, depending upon the posture of the trial and the issues, the cross-examination condemned in *Dunn* and in the present case might be permissible. *See, for example, State v. Moore*, 581 S.W.2d 873 (Mo.App.1979).

*Proof of defendant's prior criminal acts for impeachment by extrinsic evidence.*

Defendant also says that it was error to allow evidence by cross-examination of defendant's witness, Lee Roy Shockley, that witness Shockley and defendant together had escaped from the Wisconsin prison and that they together had committed the Festus-Crystal City robbery.

The complaint is not that the character of defendant's witness, Shockley, was thus denigrated by impermissible proof and the value to defendant of his testimony undermined.[7] Defendant's complaint about the

---

**6.** See Rule 608, Federal Rules of Evidence: "Specific instances of the conduct of a witness . . . may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness." The Advisory Committee's Note to the United States Supreme Court version of the Rules of Evidence on this provision call attention to Rule 403, saying: "Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury . . ." These rules recognize in this area two competing considerations which the trial judge must balance. On the one hand, the jury should be permitted to know facts which enable them to evaluate the de-

fendant witness's testimony; on the other hand, the defendant should not be unfairly prejudiced upon the issue of his guilt or innocence of the main offense. Cogent evidence on the first issue may be excluded by the second consideration. And so forth.

**7.** Anent the escape as impeaching Shockley: *State v. Dunn, supra* at 652 says: "Even so, questions put to defendant's witness to discredit such witness and which deal with purely collateral matters can prejudice a defendant and cause the reversal of a criminal conviction." The opinion cites *State v. Spencer*, 472 S.W.2d 404 (Mo.1971) and *State v. Miller*, 485 S.W.2d 435 (Mo.1972). In *Miller*, the court observed that the acts inquired about, even

testimony of Shockley is that it proved other criminal acts by defendant.

Defendant did not object to these questions, but he says that, in view of the court's ruling on his earlier objections to the same testimony during the cross-examination of defendant, that an objection would have been useless. He says he is not required to make a useless objection in order to preserve the matter for review by this court. The principle is sound, *State v. Sanford*, 317 Mo. 865, 297 S.W. 73, 77 (Mo.1927), and we have applied the same in considering the cross-examination of defendant with respect to the Festus-Crystal City robbery. We will not pause to determine whether the principle is applicable to the present situation, but will consider the point for guidance in another trial of the defendant.

■ It has always been the rule that *extrinsic* evidence could not be allowed to prove prior unconvicted criminal acts of a witness, for impeachment, and that rule has stronger reasons where defendant is the witness sought to be impeached. *State v. Leonard*, 182 S.W.2d 548, 551 (Mo.1944); *State v. Barker*, 296 Mo. 51, 246 S.W. 909, 910 (Mo.1922); 98 C.J.S. Witnesses § 506 (1957). As we have already said, the proof was not allowable on the issue of defendant's guilt or innocence. Therefore, to allow Shockley to testify of *defendant's* crimes was not allowable for any purpose.

The attorney general says, though, that the evidence was admissible to impeach the witness Shockley himself.

■ As to the Festus-Crystal City robbery, the witness had been convicted of it and it was permissible to prove the conviction as impeaching his credibility—§ 491.-050, RSMo 1969—but that does not justify the additional proof of defendant's participation in the crime. Proof of the witness's conviction could have been made without mentioning defendant's participation in it.

If proof of the Wisconsin escape was admissible to impeach witness Shockley, which is doubtful (see n. 7), once again that does not justify proof of defendant's participation therein, and its allowance would be prejudicial error.

Two other of defendant's points of error should perhaps be noticed.

### Evidence of conviction of confederate.

■ Witness Shockley was permitted to testify that he had pleaded guilty to the offense for which defendant was now being tried. Defendant says it was error to permit this, citing many cases which hold it is improper to tell the jury that an accomplice has been convicted of the crime. In one such case, *State v. McCarthy*, 567 S.W.2d 722, 724 (Mo.App.1978), it is said: "The basic rationale underlying the holdings that this is prejudicial error is that it is irrelevant and incompetent because it infers that since the confederate was guilty the defendant must therefore be guilty and violates the defendant's right to be tried on his own."

None of defendant's cases reaches our present situation where the confederate himself is testifying for defendant and the witness's commission of the crime is affirmatively brought out by defendant. The state claims it has an unconditional right to show convictions of crime for the purpose of impeachment, § 491.050 RSMo 1969—but however that may be, we see no prejudice where defendant's own theory is that the alleged confederate did indeed commit the crime, but without the defendant's participation.

### Witness in restraints.

■ Appellant complains of witness Shockley's having been brought into the courtroom as a witness for defendant, with his hands cuffed to a leather belt. The state points out that the defendant had not objected when Shockley twice earlier was brought into the courtroom in the same

though criminal, "still must affect his credibility" (485 S.W.2d at 441). In *Miller*, and also in *State v. Lora*, 305 S.W.2d 452, 455 (Mo.1957), it

is noted that the witness whose cross-examination was held to be prejudicial error was an important witness to defendant's defense.

269

restraints, for identification, and argues that defendant had thereby waived the objection. We do not decide the waiver question, preferring to deal with the matter by another approach.

Appellant's complaint presents a troublesome question. The sight of chains can only have been dramatic to a jury unaccustomed to seeing people in shackles. They are a visual demonstration of the court's lack of confidence in the witness. Physical restraints also impair the mental processes. *State v. Rudolph*, 187 Mo. 67, 85 S.W. 584, 589 (Mo. banc 1905); *State v. Jones*, 556 S.W.2d 736 (Mo.App.1977). *See also State v. Borman*, 529 S.W.2d 192 (Mo.App.1975) (and cases cited therein) and *State v. Wendel*, 532 S.W.2d 838 (Mo.App.1975), concerning the shackling of the defendant himself.

It is, of course, the responsibility of the trial judge to maintain order and safety in the courtroom and to prevent the escape of the prisoner witness, and he must be allowed a very wide discretion in the measures he takes to accomplish these ends. *Russell v. State*, 494 S.W.2d 30, 38 (Mo. 1973); *State v. Borman*, 529 S.W.2d at 194. Although there was no showing of untoward behavior during the trial, the court noted that witness Shockley was serving a penitentiary sentence for armed robbery and murder. The fact of his escape from the Wisconsin prison was also known to the trial judge.

We cannot determine from these meager facts that there was any abuse of discretion.

*Points of error not considered.*

Defendant's other points of error are clearly ruled by cases already in the books, and are without merit. Our discussion of them would be of no help to court or counsel upon another trial, and would add nothing to the literature.

For reasons discussed above, the judgment of conviction is reversed and the cause is remanded for a new trial.

All concur.