STATE of Missouri, Respondent,

v.

Robert T. SIDEBOTTOM, Appellant.

No. 69247.

Supreme Court of Missouri,
En Banc.

June 14, 1988.

Rehearing Denied July 26, 1988.

Dan J. Pingelton, Columbia, for appellant.

William L. Webster, Atty. Gen., Jared Richard Cone, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant Robert T. Sidebottom was convicted in a jury trial of first degree murder, § 565.020, RSMo 1986. The jury found aggravating circumstances, § 565.032, RSMo 1986, and imposed a sentence of death. Appellant claims the following points constitute reversible error: the inadvertent submission of evidence of prior crimes to the jury during their deliberations; comments made by the prosecutor in closing argument; the trial court's refusal to allow certain questions during cross-examination of a State witness; the submission of certain statements made by defendant to the police; the trial court's refusal to allow defense counsel to describe the nature of execution to the jury; the sufficiency of the evidence; proportionality of the punishment in this case to that in similar cases; and the constitutionality of the death penalty. We have exclusive appellate jurisdiction, Mo. Const. art. V, § 3. We also review the sentence as mandated by § 565.035, RSMo 1986. Affirmed.

Appellant was charged with the murder of his 74-year-old grandmother, May Sidebottom. She was found beaten near death in her burning home in Independence, Missouri, in the early morning hours of October 4, 1985. We present the facts in evidence and all favorable inferences that can reasonably be drawn therefrom in the light most favorable to the State, disregarding evidence and inferences to the contrary. *State v. Goddard,* 649 S.W.2d 882, 884 (Mo. banc 1983), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 689 (1983); *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

The evidence establishes that at approximately 4:00 p.m. on October 3, 1985, appellant and a co-worker, Tom Shier, went out for some drinks after work. They stayed out drinking until approximately 1:30 a.m., on October 4, 1985. Appellant estimated that he had ten to fifteen beers and about ten caffeine tablets called "mini-whites" during that time. Sometime during the evening defendant and Shier stopped at appellant's grandmother's house so appellant could get some money from her. Shier waited in appellant's car while appellant went into the house. Shier testified that appellant was upset when he came back to the car because his grandmother had given him only five dollars. Appellant intended to get twenty dollars from her. Appellant indicated that she could have given him more money, telling Shier that his grandmother had "lots" of money, referring to $14,000 that his grandmother received in insurance proceeds when his grandfather died.

Appellant and Shier made several other stops that evening, buying beer by the six-pack early in the evening and stopping at several taverns later that evening. Sometime after 1:00 a.m., appellant and Shier left the Class Reunion Bar in Blue Springs, Missouri. Appellant asked Shier to drive because appellant said he had too much to drink. Appellant told Shier to drop him off at his grandmother's house. During the ride appellant talked about needing money and kept saying that he

was going to rob somebody. He said that he knew where he could get several thousand dollars and told Shier that he would give Shier $14,000 "to cover for him if anything went wrong." They arrived at May Sidebottom's house at approximately 1:45 a.m. Appellant got out of the car and told Shier not to wait for him. Shier left with appellant's car as instructed.

At trial, witnesses testified that appellant had often bragged that he would inherit his grandmother's money when she died. May Sidebottom's close friend, LaVerne Willis, testified that appellant's relationship with his grandmother "was bad." Several months before her murder, May Sidebottom destroyed her will in which appellant was named beneficiary. Appellant's neighbor, Rick Alcorn, testified that appellant said he would kill his grandmother if this would get him into the Mafia.

The evidence indicates that May Sidebottom's assailant broke into the house by breaking the back door window and letting himself in. In his statement to the police, appellant stated that he entered his grandmother's house after Shier dropped him off but did not remember how he got in. Once inside, he confronted his grandmother with the fact that he wanted more money. She became angry with appellant and denied his request. Appellant stated that he lost his temper and began beating his grandmother. He struck her in the head and back with his fists and a chair until she stopped moving. He then started a fire in a bedroom and left.

Police arrived at the burning house at approximately 2:35 a.m. They found May Sidebottom lying unconscious, but still alive, in a pool of blood in the kitchen of her house. The evidence reveals that she was brutally beaten. Blood was splattered on the floor, walls, and ceiling in the kitchen, dining room, and living room. Pieces of a broken chair were scattered about the floor. An autopsy revealed that May Sidebottom died of multiple injuries, particularly blunt force injury to the head and neck. She suffered a fractured cervical spine, fractured jaw, broken nose, five frontal rib fractures and three back rib fractures.

Appellant's first point on appeal is that the trial court erred in not declaring a mistrial when it discovered that evidence of prior crimes was inadvertently sent into the jury during deliberations. During the first hour of the jury's deliberations, the jury requested pictures, statements, and graphs that had been submitted as exhibits. Among those exhibits was a "Prisoner Data Form" stating that appellant had either been charged with or committed the crimes of rape and burglary. Shortly after receiving these exhibits, the jury sent a note to the trial judge asking if appellant "had been convicted of rape + burglary or had just been charged which does not constitute guilt." This was the first instance at which the court and attorneys realized that this information was in evidence. The exhibit had been stipulated into evidence but the parties did not realize that it contained evidence of other offenses.

In a conference between the attorneys and the trial judge, appellant's trial counsel looked at the data form and stated: "'Charges known to have committed.' It says rape. It's a wonder they didn't accept that." Appellant's counsel agreed that the proper remedy was to instruct the jury not to consider these entries in arriving at their verdict. Appellant's counsel did not request a mistrial nor did he raise the issue in his motion for new trial. Under the guidance of new counsel on appeal, appellant requests that we review this issue for plain error.

It is well established that evidence of other crimes unrelated to the case at trial is inadmissible unless such evidence has some legitimate tendency to establish the defendant's guilt of the crime charged. *State v. Williams*, 652 S.W.2d 102, 110 (Mo. banc 1983). In this case, there is no contention that the information regarding the rape and burglary was related to the crime charged. However, the declaration of a mistrial is a drastic remedy and should only be employed in the most extraordinary

circumstances. *State v. Young,* 701 S.W. 2d 429, 434 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986); *State v. Gilmore,* 681 S.W.2d 934, 943 (Mo. banc 1984). Relief will be granted under the plain error rule only when the error "so substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983). We do not find that defense counsel's failure to request, and the trial court's failure to grant *sua sponte,* a mistrial resulted in manifest injustice.

The situation before the Court is similar to that discussed in *State v. Gilmore,* 681 S.W.2d at 942–43, in which a State's witness volunteers an unresponsive reference to the defendant's involvement in an unrelated and distinct crime. Factors considered in such cases in determining the prejudicial effect of these statements include "the promptness of the trial court's action in directing the jury to disregard, the offensiveness of the conduct referred to, and the isolated nature of the statement, as well as the lack of any evidence that the state connived in any fashion to permit the testimony to come in." *State v. Jackson,* 657 S.W.2d 44, 46 (Mo.App.1983). In this case, the trial court acted promptly, the prosecutor made no attempt to utilize or emphasize the references on the data form, and there is no indication that the prosecutor made a conscious effort to inject these inferences into evidence. *See State v. Crawford,* 619 S.W.2d 735, 740 (Mo.1981). Although the offensiveness of the crimes referred to on the data sheet is of serious gravity, the case law supports denial of a mistrial in such cases when in the discretion of the trial court a curative instruction was sufficient in light of the other factors considered, *e.g., State v. Williams,* 573 S.W.2d 75, 76 (Mo.App. 1978); *State v. Walker,* 531 S.W.2d 55, 56–57 (Mo.App.1975), or under the plain error rule, manifest injustice did not result. *E.g., Gilmore,* 681 S.W.2d at 943; *State v. Escoe,* 548 S.W.2d 568 (Mo. banc 1977). Appellant's point is denied.

■ Appellant's next contention is that the trial court erred in failing to instruct the prosecuting attorney not to comment on appellant's failure to testify and in failing to order a new trial when the prosecutor allegedly made reference to appellant's failure to testify. Defense counsel made no objection to the challenged comments at trial or in the motion for new trial. We review under the plain error rule.

■ It is firmly embedded in the law that a prosecutor may not comment on a defendant's failure to testify. *State v. Inscore,* 592 S.W.2d 809, 813 (Mo. banc 1980); section 546.270, RSMo 1986; Rule 27.05. This rule does not prohibit a prosecutor from making reference to the defendant's failure to offer evidence. *Inscore,* 592 S.W.2d at 813; *State v. Sechrest,* 485 S.W. 2d 96, 98 (Mo.1972). It proscribes only direct and certain references to the accused's failure to testify. *State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Hutchinson,* 458 S.W.2d 553, 555 (Mo. banc 1970). Furthermore, alleged errors committed in closing argument do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury. *State v. Murphy,* 592 S.W.2d 727, 732 (Mo. banc 1979); *State v. Masterson,* 733 S.W.2d 40, 44 (Mo.App. 1987).

■ During closing argument, the prosecutor made no direct references to appellant's failure to testify. Appellant objects to the prosecutor's comments reminding the jury that defense counsel's opening statements did not constitute evidence and that defense counsel failed to put on any evidence after making references in his opening statement as to what the evidence would show. The prosecutor stated:

Mr. McMullin [defense counsel] said he was going to put on evidence in his opening statement and he didn't do that. So you can throw out everything he said in his opening statement, because he didn't put on any evidence.

And, members of the jury, that's what we're talking about here. The instruc-

tion says, "The opening statements of attorneys are not evidence." Where is your evidence, Mr. McMullin? What do you do when you don't have a defense ...

You badger, you cross-examine, you yell and scream at the State's witnesses because that's all you can do. And he's a fine lawyer and he's been practicing law for a long time and he's trained in cross-examination, he'd cross up anybody in the courtroom. And he's good at that, but that's not evidence. Don't consider that.

Appellant asserts that the prosecutor's repeated references and personal jabs at defense counsel for not putting on any evidence has the same effect as a direct reference to the defendant not testifying. We find that the prosecutor's comments were well within the permissible guidelines for closing argument. Furthermore, even if the prosecutor's comments viewed in their entirety were impermissible as appellant contends, appellant's argument fails to meet the standard for plain error. *See* *State v. Wood*, 719 S.W.2d 756, 759–60 (Mo. banc 1986); *State v. Crawford*, 719 S.W.2d 11, 12 (Mo.App.1986).

Appellant next alleges that the trial court erred in refusing to allow appellant to cross-examine State's witness Tom Shier regarding his involvement in a drug deal. In an effort to impeach Shier's credibility, defense counsel wanted to ask Shier on cross-examination: "Now, you have been involved in the purchase or sale of drugs recently involving $3,700.00, haven't you?" Defense counsel obtained this information from Shier in discovery. The prosecutor objected to the question in a motion in limine. In an in-chambers conference, the trial judge and trial attorneys agreed that if Shier were to invoke his fifth amendment privilege against self-incrimination when asked this question, there would be no point in having him do so in front of the jury. The court appointed Shier counsel to advise him of his fifth amendment rights and then had defense counsel pose the

question to Shier in the judge's chambers. Shier invoked his privilege against self-incrimination. The court ruled that defense counsel could not ask the question in front of the jury.

Defense counsel raised two objections to the court's ruling. First, defense counsel argued that Shier was not entitled to invoke his fifth amendment privilege because he had waived it by answering questions related to this drug deal in discovery. Second, in the alternative, defense counsel moved to strike all of Shier's testimony so that Shier could not selectively testify to matters helpful to the State and then refuse to testify to matters harmful to his credibility thereby limiting the defense on cross-examination. These two points were preserved for appellate review. In addition, appellant maintains that Shier should have been forced to invoke his fifth amendment privilege in front of the jury. We review this point for plain error.

■■■ The trial court held that Shier had not waived his privilege against self-incrimination because he had not been informed of his rights or received the advice of counsel at his deposition. The privilege against self-incrimination under Article I, § 19 of the Missouri Constitution and the Fifth and Fourteenth Amendments to the United States Constitution extends to non-party witnesses at depositions. *State v. Wilkinson*, 606 S.W.2d 632, 636–37 (Mo. banc 1980); *State ex rel. Taylor v. Luten*, 710 S.W.2d 906, 907 (Mo.App.1986). This right is waived only when the witness gives testimony voluntarily. *State v. Burnett*, 357 Mo. 106, 113, 206 S.W.2d 345, 348 (1947); *United States v. Plesons*, 560 F.2d 890, 894 (8th Cir.1977), *cert. denied* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977). Whether testimony is given voluntarily is determined by the particular facts of each case taking into account "whether the [witness] was ignorant; whether he had counsel; whether he was advised of his rights; whether coercive methods were employed in obtaining the statement from him, etc." *Burnett*, 357 Mo. at 113, 206

S.W.2d at 348. The trial court determined that Shier's ignorance as to his rights precluded defense counsel's waiver theory. We find no error in the trial court's determination. *See State v. Miller,* 485 S.W.2d 435, 441 (Mo.1972); *Plesons,* 560 F.2d at 894.

Nor do we find that Shier's invocation of his fifth amendment right required that all of his testimony be struck. "[A] state witness's invocation of his fifth amendment right against self-incrimination during cross-examination does not *per se* violate a defendant's right to confront the witnesses against him and require striking of that testimony." *State v. Blair,* 638 S.W.2d 739, 754 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). Where the privilege has been invoked as to purely collateral matters such as those relating solely to the credibility of the witness or to prior criminal activity of the witness, there is little danger of prejudice to the defendant and the witness's testimony may be used against him. *State v. Brown,* 549 S.W.2d 336, 342 (Mo. banc 1977); *Blair,* 638 S.W.2d at 754.

In the instant case, Shier refused to answer only the question regarding the drug deal. This question was purely collateral in nature to impeach Shier's credibility. There is no contention that Shier refused to answer any questions related directly to the crime for which appellant was charged and matters about which the witness testified on direct examination. Appellant's point is denied.

Finally, appellant argues that the trial judge should have allowed defense counsel to ask Shier the drug related question in the presence of the jury. When it is claimed that a witness will invoke his privilege against self-incrimination, it is within the trial court's discretion to determine whether the witness should be permitted or required to take the stand. *State v. Wright,* 582 S.W.2d 275, 282 (Mo. banc 1979). This issue usually arises when the State calls a witness to invoke his right against self-incrimination in order to infer to the jury that the witness and the accused were engaged in joint criminal activity. *State v. Berry,* 658 S.W.2d 476, 479 (Mo.App.1983). It is impermissible for either party to use the refusal of a witness to testify on self-incrimination grounds for any inference, whether favorable or unfavorable to either party. *State v. Loggins,* 698 S.W.2d 915, 918 (Mo.App.1985). Therefore, it would be improper to require a witness to take the stand solely for the purpose of invoking his privilege against self-incrimination. *State v. Horne,* 691 S.W.2d 402, 404 (Mo.App.1985). However, when there is a reasonable expectation that the witness will provide some legitimate testimony in addition to invoking his privilege against self-incrimination, or when there is some question as to whether the witness will invoke this privilege at all, the court may require the witness to take the stand, *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); *Wright,* 582 S.W.2d at 282–83, and it is not error for the court to require the witness to claim the privilege against self-incrimination in the presence of the jury. *Id.* at 282.

This Court has never addressed whether the trial court must direct a witness who testifies to invoke the privilege against self-incrimination in the presence of the jury.[1] In *United States v. Seifert,* 648 F.2d 557, 560–561 (9th Cir.1980), the court held that where the witness refused to answer an incriminating question on cross-examination, it served as a form of im-

---

1. In *State v. Berry,* 658 S.W.2d 476, 479 (Mo. App.1983), the court considered whether the trial court must direct a witness to declare his privilege against self-incrimination in the presence of the jury in order to dispel any negative inference that the jury could draw from the defendant's failure to call the witness to testify.

There was no contention that the witness would provide any testimony in addition to invoking his privilege against self-incrimination. The court held that the trial court had not abused its discretion in not requiring the witness to invoke his privilege against self-incrimination in the presence of the jury.

peachment and should have been asked in the presence of the jury. The court, however, held that the trial court had not committed reversible error because the defendants "had ample opportunity in the course of their lengthy cross-examination of [the witness] and in their examination of other witnesses to impeach [the witness's] testimony." *Id.* at 861; *Accord United States v. Kaplan,* 832 F.2d 676, 684–85 (1st Cir. 1987).

Assuming that Shier should have been required to invoke his privilege against self-incrimination in the presence of the jury, we find that defense counsel had ample opportunity to impeach Shier's credibility, questioning Shier about a deal he made with the prosecutor to dismiss a felony charge against him in return for his testimony and questioning him about another charge still pending against him for stealing over $150.00. As already noted, defense counsel did not request that Shier be required to invoke his privilege against self-incrimination in the presence of the jury and made no objections to that effect. We find no manifest injustice or miscarriage of justice in the trial court's ruling.

Appellant next contends that the trial court erred in overruling his motion to suppress his first statement to the police which was made before he was formally arrested. On October 5, 1985, appellant accompanied his parents to the Floral Hills cemetery in Kansas City, Missouri, to make funeral arrangements for his grandmother. While at the cemetery, four plain clothes detectives from the Independence Police Department approached appellant. They asked appellant if he would voluntarily accompany them to the Independence police station for an interview regarding his grandmother's murder. Appellant agreed to go with the detectives. Appellant was frisked and advised of his constitutional rights. Appellant was then driven to the Independence police station where he signed a statement waiving his fifth amendment rights. *See Miranda v. Arizona,* 384 U.S. 436, 467–71, 86 S.Ct. 1602, 1624–26, 16 L.Ed.2d 694 (1966). Appellant was interviewed for more than six hours during which time he made several incriminating statements to the effect that he may have killed his grandmother. Police also took photographs of appellant, samples of hair and saliva, and fingernail scrapings during the interview. After the interview appellant was released.

Appellant claims that the actions of the police detectives constitute a constructive arrest for which there was no probable cause. The State maintains that appellant voluntarily accompanied the detectives and voluntarily submitted to everything that occurred during the interview. Therefore, the State contends, no arrest occurred. We need not decide whether an arrest occurred because we believe that probable cause existed and therefore the statements and evidence obtained during the interview are admissible in either case.

 Police officers may make an arrest outside their territorial jurisdiction only upon the showing of the commission of a felony and reasonable grounds for probable cause. *See State v. Fritz,* 490 S.W.2d 30, 32 (Mo.1973), *cert. denied,* 411 U.S. 985, 93 S.Ct. 2282, 36 L.Ed.2d 962 (1973); *Settle v. State,* 679 S.W.2d 310, 317 (Mo.App.1984), *cert. denied,* 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). "Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested." *State v. Giffin,* 640 S.W.2d 128, 131 (Mo.1982).

 In the instant case, appellant's grandmother was murdered the day before the "arrest." The police had a report by appellant's grandmother that he had raped her in September 1984; they had Tom Shier's statement that he dropped appellant off at his grandmother's house sometime after 1:30 a.m. of the night of the murder,

924

that appellant had told Shier he wanted to rob someone that night, that he could get $14,000 from his grandmother, and that he would give Shier the $14,000 to cover for him if anything went wrong; police had a statement from appellant's neighbor, Rick Alcorn, that appellant had told Alcorn that he wanted to join the Mafia and would kill his grandmother to be admitted and Alcorn also told police that he thought he recognized appellant's "distinct knock" on his door around 2:15 a.m. of the night of the murder, shortly after the murder was believed to have occurred. We find that these facts are sufficient to have provided the police with reasonable grounds to suspect appellant of having committed the murder. *See State v. Cobb*, 484 S.W.2d 196, 199 (Mo. banc 1972); *State v. Vinzant*, 716 S.W.2d 367, 371 (Mo.App.1986); *Mueller v. Powell*, 203 F.2d 797, 801 (8th Cir. 1953).

Appellant also contends that the police did not have probable cause to detain him at the police station during which time appellant made several incriminating statements. Therefore, appellant argues, the statements must be suppressed. Appellant claims that had there been probable cause to detain him, the police would not have released him following his incriminating statements. Appellant quotes *State v. Riley*, 704 S.W.2d 691, 694 (Mo.App.1986): "An arrest is illegal if its purpose is to afford police officers the time and opportunity to investigate and amass facts sufficient to constitute probable cause.... Probable cause must be analyzed according to the facts known at the time of the arrest, not according to facts learned later."

The quoted language relied on by appellant is inapplicable to the facts in this case. In *Riley*, the court determined that there was no probable cause for the arrest at the time of the arrest. Therefore, the court held that evidence obtained while the defendant was being detained at the police station following the illegal arrest was inadmissible. The court rejected the State's argument that evidence obtained after the

arrest constituted probable cause for the arrest. In the instant case, we have already determined that the police had probable cause at the time of the "arrest." The fact that the police released appellant after questioning him is consistent with the State's contention that the police did not intend to "arrest" appellant or actually did "arrest" appellant. This, however, has no bearing on the legality of the "arrest" and the subsequent interview at the Independence police station. *See State v. Jones*, 705 S.W.2d 19, 23 (Mo. banc 1986), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986). Thus, we hold that the trial court did not err in not suppressing the incriminating statements made by appellant when he accompanied the police to the Independence police station.

Appellant next contends that the trial court erred in admitting into evidence appellant's confession subsequent to his arrest on October 9, 1985. The basis of appellant's claim is that proof of appellant's waiver of his fifth amendment rights should have been made through the use of an audio tape recorder because this would have been the most reliable proof practically available at the time of the waiver. Appellant also contends that the confession itself should have been made on an audio tape recorder. Appellant argues that this is within the Supreme Court's mandate in *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931–32, 49 L.Ed.2d 859 (1976), that courts be "particularly sensitive to insure that every safeguard is observed" when a defendant's life is at stake.

■ "A confession is admissible if the state proves by a preponderance of the evidence that it was voluntary." *State v. Hughes*, 596 S.W.2d 723, 726 (Mo. banc 1980). The State must show that the defendant was effectively advised of his rights and that he intelligently and understandingly decided to waive them. *Id*.

■ Appellant was advised of his fifth amendment rights as required by *Miranda v. Arizona*, 384 U.S. 436, 467–71, 86 S.Ct.

1602, 1624–26, 16 L.Ed.2d 694 (1966), at the time of his arrest on October 9, 1985. Appellant indicated that he understood his rights. Appellant gave his confession to police over a two day period. Each day, before he began to talk about the murder, appellant was presented with a rights waiver form, which he read, indicated that he understood, and signed. Appellant proceeded to give his statement without any indication of coercion by the police. Appellant was given food and permitted to use the restroom during the interview. The interview was ended when appellant indicated that he was getting tired and wanted to stop. Appellant read his statement as written by the reporting officer and initialed each page and any mistakes made by the officer, thereby indicating that the statement was accurate as written. We find that there is sufficient evidence to sustain the trial court's ruling that appellant intelligently and understandably waived his right to remain silent and that his statement was accurately recorded and voluntarily given. The law requires no more. *See State v. Lytle*, 715 S.W.2d 910, 914–16 (Mo. banc 1986); *Hughes*, 596 S.W. 2d at 727. Appellant's argument for the use of an audio tape recorder is denied.

Appellant next contends that the trial court erred in not allowing defense counsel to discuss the nature of execution, including the details surrounding death during execution in the gas chamber, during the sentencing phase. Appellant claims that such evidence is part of a balanced education of "relevant" evidence sanctioned by the Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

In *Gregg*, the Supreme Court stated:

So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

428 U.S. at 203–04, 96 S.Ct. at 2939. The quoted language was in reference to the scheme of aggravating and mitigating circumstances to be considered by the jury during the presentence hearings of a capital punishment case. *See Gregg*, 428 U.S. at 196–204, 96 S.Ct. at 2936–39. The Supreme Court was considering information "relevant to the question of penalty." *Id.* at 191, 96 S.Ct. at 2934. In Missouri, the legislature has determined that the method of execution be by poisonous gas. § 546.720, RSMo 1986. We fail to see the relevance of a description of the physical effect the poisonous gas has on a defendant in determining whether to impose the death sentence under the guidelines of section 565.032, RSMo 1986. Appellant's point is denied.

Appellant next challenges the sufficiency of the evidence. From the facts set out *supra*, supported by appellant's confession and the testimony of many witnesses, especially those to whom appellant made statements about killing his grandmother prior to the murder, viewed in the light most favorable to the jury's verdict, *State v. McDonald*, 661 S.W.2d 497, 500 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985), we hold that the evidence is sufficient for the jury to find beyond a reasonable doubt that appellant committed the crime for which he was convicted.

Appellant also challenges the constitutionality of the death penalty. This Court has consistently upheld Missouri's death penalty provisions against such challenges. *See, e.g., State v. Driscoll*, 711 S.W.2d 512, 517 (Mo. banc 1986), *cert. denied*, 107 U.S. 329, 107 S.Ct. 329, 93 L.Ed. 2d 301 (1986). This point is denied.

Finally, appellant challenges the appropriateness of the death penalty. We review this matter as mandated by the General Assembly, § 565.035, RSMo 1986, determining by independent review:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

We find nothing in the record that suggests the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. In appellant's motion for a new trial, appellant argued that testimony in the penalty phase of the trial by Ms. Janice Flandermeyer allowing her to describe a previous incident in which appellant sexually assaulted her was inflammatory and induced passion and prejudice by the jury. "Evidence of prior offenses, including details that reflect their seriousness, is relevant and not inadmissible because it arguably prejudices the defendant" when it is deemed helpful to assist the jury in fixing punishment. *State v. Malone*, 694 S.W.2d 723, 727 (Mo. banc 1985), *cert. denied*, 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986). In addition, § 565.032.1(1) requires the trial judge to instruct the jury to consider statutory aggravating circumstances supported by the evidence. Section 565.032.2(1) includes as a statutory aggravating circumstance "one or more serious assaultive criminal convictions." "Clearly some details and description of the crimes must be shown for the jury to find that the convictions were for *serious* assaultive crimes." *State v. Schlup*, 724 S.W.2d 236, 239–40 (Mo. banc 1986), *cert. denied*, — U.S. —, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). Ms. Flandermeyer's testimony provided evidence of such a conviction. The extent and detail of her testimony was within the sound discretion of the trial court. *Id.; Malone*, 694 S.W.2d at 727; *State v. Bannister*, 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1984). We do not find that the trial court abused its discretion.

We also find that the evidence supports the jury's finding of the aggravating statutory circumstances. The jury found two statutory aggravating circumstances. Ms. Flandermeyer's testimony supports the jury's finding that appellant was convicted of a serious assaultive crime. The jury also found that the crime "involved depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible or inhuman." The evidence supports a finding that appellant broke into his grandmother's house, brutally beat her, set fire to her home, and left her lying there unconscious. We find Judge Levitt's comments in response to whether the crime showed depravity of mind particularly appropriate. Judge Levitt stated that in his seventeen years on the bench, he had "seen maybe one other [capital murder] case that was as vicious as this."

The victim did not die immediately, she lived for an hour to two hours afterwards.... She was beaten so savagely that she had a broken nose, broken jaw, broken cervical spine, she had eight ribs that were fractured, she had bruises about her face, she had a hemorrhage of the brain, she had numerous other bruises and physical evidence of savage beating that went on for a period of time. Her arm was completely bruised, which the testimony showed was the result of trying to ward off the blows of being beaten with a chair.

We believe that the evidence supports the jury's finding of depravity of mind. *See State v. Mercer*, 618 S.W.2d 1, 11 (Mo. banc 1981), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981).

Finally, we must consider whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, taking into account the appellant and the crime. In *State v. Preston*, 673 S.W.2d 1, 11–12 (Mo. banc 1984), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), the Court outlined a pattern in cases applying the depravity of

mind circumstance. The factors included infliction of multiple wounds while the victim was still alive, physical torture, and brutal beatings. In most of these cases, the victims had time to anticipate their fate and the defendant showed no remorse and a lack of concern for human life. *See State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 82 L.Ed.2d 156 (1984); *State v. Battle,* 661 S.W.2d 487 (Mo. banc 1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed. 2d 847 (1984); *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. LaRette,* 648 S.W.2d 96 (Mo. banc 1983), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed. 2d 1030 (1983); *State v. Stokes,* 638 S.W.2d 715 (Mo. banc 1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983). Some of these cases are more aggravated in that they involved additional aggravated circumstances. However, *Preston* considered only the application of the depravity of mind circumstance in these cases. In *Stokes,* 638 S.W.2d at 724, the Court stated that the aggravating circumstances involving "torture or depravity of mind" resulting in a murder that is "outrageously or wantonly vile, horrible or inhuman," "provides the greatest guidance in [the Court's] effort to comply with the dictates of § 565.014.3(3) [now 565.035.3(3)] in resolving '[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.'" We find that appellant's actions fit within the standard considered in *Preston.* Moreover, there was evidence of a prior serious assaultive conviction and other serious misconduct in this case. Viewed in light of cases in which death and life imprisonment have been submitted to the jury, we find that appellant's sentence is not excessive or disproportionate to the penalty in similar cases, finding the elements in this case particularly similar to those considered in *State v. Mathenia,* 702 S.W.2d 840 (Mo. banc 1986), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986). *See also State v. Jones,* 705 S.W.2d 19 (Mo. banc 1986), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *State v. Lashley,* 667 S.W.2d 712 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 106 S.Ct. 229, 83 L.Ed.2d 158 (1984); *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

The judgment is affirmed.

All concur.