John F. DEES, Appellant,

v.

Paul CASPIRI, Appellee.

No. 89–2102.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1990.

Decided June 1, 1990.

Rehearing Denied July 12, 1990.

Howard B. Eisenberg, Carbondale, Ill., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, and MAGILL and BEAM, Circuit Judges.

PER CURIAM.

John Dees appeals the denial of his petition for a writ of habeas corpus arising out of his state court conviction for rape and burglary. The Missouri Court of Appeals affirmed his conviction on direct appeal, *State v. Dees*, 639 S.W.2d 149 (Mo.Ct.App. 1982), and later affirmed the denial of post-conviction relief. *Dees v. State*, 753 S.W.2d 598 (Mo.Ct.App.1988). Dees then filed this petition. Upon recommendation of the United States Magistrate, the district court[1] entered an order denying the writ. We affirm the district court.

BACKGROUND

Dees claims his trial counsel was constitutionally ineffective in failing to seek out, investigate, and prepare to cross examine experts regarding certain shoe prints found at the scene of the crime which allegedly came from Dees's tennis shoes.

Police found shoe print evidence in four places at or near the victim's apartment. In the room where the rape occurred, the police recovered several oddly shaped pieces of dried mud. Some 60 feet away, behind another apartment in the complex, the police found a partial shoe print bearing the brand name "TRAX." At yet another apartment, where another burglary had been reported on the same night, the police found several wedge-shaped pieces of mud, and a shoe print just outside. They took photographs and made a plaster cast of this print. When Dees was arrested about two weeks later, the police seized a pair of "TRAX" tennis shoes.[2]

---

1. The Honorable George F. Gunn, United States District Court for the Eastern District of Missouri.

2. In addition to these prints the state's evidence included the testimony of the victim and her son that the assailant was a man whose height, weight, and hair corresponded with Dees's. Although they did not see his face during the crime, they testified that he wore a dark stocking cap, and the police found a dark blue stocking cap in Dees's car at the time of his arrest. Analysis of seminal stains from the victim's underclothing revealed that the rapist had Type A blood and that he was a "secreter," i.e., blood type factors were secreted in his bodily fluids. Approximately 34 percent of the population are "Type A secreters". Dees has these blood type characteristics.

A forensics expert, Dr. Briner, analyzed the shoes, mud, cast, and photographs. He found similarities both in class characteristics—patterns or markings from manufacture typical of all shoes in that class—and individual characteristics—unique wear and markings from use. The mud pieces, photographs, and plaster cast all shared class characteristics with the shoes. In addition, the photographs of the print showed five individual characteristics in common with the shoes; the plaster cast showed one individual characteristic; the "TRAX" piece of mud had eight individual characteristics, and the wedge-shaped pieces of mud had green paint on them that corresponded to green paint on the shoes. Dr. Briner concluded that the Dees's shoes made the prints found near the crime scene.

Dees's counsel obtained Dr. Briner's report, took Dr. Briner's deposition, and examined his laboratory and equipment. Counsel consulted a fellow attorney who recommended another expert, a Mr. Secunda. When Secunda told him he was experienced in shoe print analysis, counsel provided Secunda with Dr. Briner's report, deposition, and the photographs. Counsel did not provide Secunda with the plaster cast, which remained in police custody. Secunda concluded that Dr. Briner's conclusions were unassailable.

Counsel consulted with Dees, who insisted that he spent the night of the crime with his girlfriend. He explained that his brother had access to the shoes that night, or that the police could have "framed" him by making the plaster cast of his shoe after seizing it upon his arrest. Counsel and Dees agreed to pursue a defense of alibi. The jury found Dees guilty.

DISCUSSION

■ Dees argues that his counsel was ineffective because he failed to (1) look for experts to contradict Dr. Briner's conclusions, (2) further investigate Secunda's credentials, and (3) fully familiarize himself with the tests performed by Secunda in order to effectively cross-examine Dr. Briner. To prove constitutionally ineffective assistance of counsel, Dees must establish that counsel's performance fell below the standard of a reasonable attorney under the same circumstances, and that a different outcome in the trial was reasonably probable had the performance not been deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

1. *Failure to Find Other Experts*

■ Considering the importance of the shoe print evidence in this case, counsel had a duty to make a diligent investigation of the forensic evidence and its potential weaknesses. *Knott v. Mabry*, 671 F.2d 1208, 1212–13 (8th Cir.), *cert. denied*, 459 U.S. 851, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982). Counsel prudently determined to seek the opinion of another expert, Mr. Secunda. Dees argues that, even though Secunda confirmed the opinion of the state's expert Dr. Briner, counsel should have continued to look for other experts. At the state post-conviction proceeding, Dees produced two experts who testified that Dees's shoe could not have made the print in the cast.

While our opinions have stressed the importance of investigating likely prosecution witnesses, *see, e.g., Couch v. Trickey*, 892 F.2d 1338, 1344–48 (8th Cir.1989) (Lay, dissenting), and known material witnesses, *see Eldridge v. Atkins*, 665 F.2d 228, 231–36 (8th Cir.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982), we have never suggested counsel must continue looking for experts just because the one he has consulted gave an unfavorable opinion. Indeed, in the one case where we specifically considered if counsel had a duty to call a rebuttal expert witness, we found strategic reasons justified counsel's choice to cross-examine the state's expert in layman's terms. *Knott v. Mabry*, 671 F.2d at 1213.

■ In this case we also find that counsel's strategic concerns supported his decision not to look for another expert. At the state post-conviction hearing, counsel specifically stated he had been concerned that further investigation of experts would only produce additional adverse opinions that the state could discover and use against his

client.[3] Thus, having heard two strongly adverse opinions, counsel made a reasonable strategic calculation that the possibility of finding another, favorable expert was outweighed by the risk that he would merely provide the state another adverse expert opinion.

### 2. *Failure to Investigate Expert's Credentials*

■ Dees argues that counsel selected Mr. Secunda without adequate investigation of his credentials. Counsel obtained Mr. Secunda's name upon a recommendation from an experienced criminal defense attorney. Secunda told counsel he had ten years experience in crime labs, he had conducted shoe comparisons in the past, and he felt comfortable analyzing the prints in this case. Although this investigation of Secunda's credentials probably was sufficient, we need not decide this issue because Dees has made no showing that Secunda's credentials were in fact inadequate. Thus, even assuming counsel was deficient in this respect, Dees has submitted no evidence to prove he was prejudiced by that deficiency.

### 3. *Failure to Investigate Test Results*

Dees argues that counsel failed to adequately familiarize himself with the tests performed by Mr. Secunda. He asserts that as a result, counsel's cross-examination of Dr. Briner was deficient, especially regarding the plaster cast. Dr. Briner stated he relied "only slightly" on the cast in reaching his conclusions, but counsel asked him no questions about this statement. In the state post-conviction hearing Dees presented an expert who testified that a three-dimensional cast is a more reliable basis for analysis than a two-dimensional photograph.

■ We agree that counsel had a duty to garner the expertise necessary to cross examine Dr. Briner. *See Knott v. Mabry,* 671 F.2d at 1213 (failure to become versed in a technical matter in order to effectively cross examine can be constitutionally ineffective representation). This duty of preparation, however, would not require counsel to find one particular expert who would have weighed the plaster cast differently than Dr. Briner. At most counsel might be deficient for failing to discover and make use of a widely held scientific view. Here we have no basis to determine whether the post-conviction expert's view represented the general opinion of the scientific community.

In addition, Dr. Briner discounted the plaster cast only because it did not pick up as much detail as the photographs, not because he found it inconsistent with the shoe or other evidence. Indeed, he found that the cast shared class characteristics with the shoe, and one individual characteristic. It thus appears that Dr. Briner could

---

**3.** Although the courts below and the state on this appeal have all relied on this argument, the appropriate Missouri law was not briefed to this court. Missouri discovery rules differ significantly from the federal rules. Under Missouri Supreme Court Rules of Criminal Procedure, Rule 25.05, the defendant must disclose the opinions of any experts he intends to call at trial. In certain respects this rule parallels Fed. R.Crim.P. 16(b)(1)(B). However, under Missouri Rule 25.06 the defendant also may be compelled to reveal the reports of experts he does not intend to call at trial. The only requirements are a written motion by the state and a finding by the court that the motion is "reasonable" and the information requested is "relevant and material to the state's case." *See* Rule 25.06. This rule was in existence at the time counsel investigated the matters in this case.

The en banc Supreme Court of Missouri in 1982 interpreted this rule very broadly. *State v.* *Carter,* 641 S.W.2d 54 (Mo.1982) (en banc), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983). The court held that the rule required disclosure even if the information requested was privileged as attorney work product. *Id.* at 58–59. Moreover, the court pointed out that the work product privilege in Missouri only protects "opinions, theories or conclusions of defendant's attorney ... [and] communications between defendant and his attorney." *Id.* at 59 (quoting earlier cases). The court also held that Rule 25.06 did not deprive the defendant of his sixth amendment right to effective counsel because the attorney-client privilege is not of constitutional origin. *Id. See also Foote v. Hart,* 728 S.W.2d 295 (Mo.Ct.App.1987) (attorney ordered to disclose his notes from interview of witness he did not intend to call at trial). We think these cases make it clear counsel was appropriately cautious of this rule's potential application to his investigation.

have had a ready response to counsel's question about why he did not rely heavily on the cast. Also, Dr. Briner's opinions regarding the photographs and mud were very strong.

 Counsel did familiarize himself with Dr. Briner's analysis, reports, and laboratory equipment, and he found several bases for cross-examination. He brought out that some of the mud pieces had individual characteristics that were not found on the shoes, and he emphasized that the mud pieces could have fit with other shoes of the same brand and type. He extracted Dr. Briner's concession that he was not able to analyze the green paint in sufficient detail even to determine if it was latex, enamel, or water based. Lastly, he emphasized that all the crucial shoe print evidence came from neighboring apartments, and that Dr. Briner almost always testified for the state. Counsel's failure to add to this a question about the propriety of discounting the plaster cast, if deficient at all, simply was not significant enough to constitute ineffective assistance of counsel.

As we observed in *Knott v. Mabry:*

Although petitioner's trial counsel probably should have increased his knowledge of the relevant scientific techniques and principles by consulting an expert * * * or by studying literature in the field, we have difficulty in light of the existing record holding that *counsel's* representation was constitutionally inadequate. Human nature is such that most people think they have a better understanding of the demands of an event after it has happened. Trial of law suits is peculiarly susceptible to hindsight appraisal of another lawyer's endeavors. When trial counsel exercise their judgment in making strategic decisions, third party post-trial construction of strategic alternatives cannot be the sole basis for finding constitutional deficiency.

671 F.2d at 1212.

CONCLUSION

Counsel in this case was faced with strong forensic evidence, an equivocal alibi, and a tough discovery disclosure rule. We conclude he reasonably prepared a competent defense in a difficult case to defend. Affirmed.