Robert T. SIDEBOTTOM, Appellant,

v.

Paul DELO; Jay Nixon, Appellees.

No. 94-1463.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1994.

Decided Jan. 26, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 22, 1995.

K. Leslie Delk, Norman, OK, argued, for appellant.

Michael Joseph Spillane, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Robert T. Sidebottom, convicted and sentenced to death for the capital murder of his seventy-four year old grandmother, May Sidebottom, appeals the district court's [1] order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

## I.

The facts giving rise to Sidebottom's conviction are fully set forth in the Missouri Supreme Court's opinion in Sidebottom's direct appeal. *State v. Sidebottom*, 753 S.W.2d 915 (Mo.) (en banc), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). We summarize them here briefly.

In the late afternoon of October 3, 1985, Sidebottom and a coworker, Tom Shier, went out for some drinks after work. They stayed out drinking until early the next morning. In his initial statement to police, Sidebottom estimated that he had had ten to fifteen

---

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

beers and about ten caffeine tablets called "mini-whites" during that time.

Sometime during the evening, Sidebottom and Shier stopped at May Sidebottom's home so that Sidebottom could obtain some money from her. Shier stayed in Sidebottom's car while Sidebottom went into the house. Shier testified that Sidebottom was upset when he came back to the car because his grandmother had given him only five dollars and that Sidebottom had intended to get twenty dollars from her. Sidebottom indicated that his grandmother could have given him more money, telling Shier that she had "lots" of money and referring to $14,000 that his grandmother had received in insurance proceeds when his grandfather died. Sidebottom and Shier made several other stops that evening, buying six-packs of beer early in the evening and stopping later at several taverns.

In the early morning hours of October 4, 1985, Sidebottom and Shier left the Class Reunion Bar in Blue Springs, Missouri. Sidebottom asked Shier to drive because he said that he (Sidebottom) had had too much to drink and instructed Shier to take him to his grandmother's house in Independence, Missouri. During the trip, Sidebottom talked about needing money, and he made repeated statements that he was going to rob somebody. He also said that he knew where he could get several thousand dollars and told Shier that he would give Shier $14,000 "to cover for him if anything went wrong." Other witnesses also testified that Sidebottom had often bragged about inheriting his grandmother's money when she died. Laverne Willis, a close friend of May Sidebottom, testified that Sidebottom's relationship with his grandmother "was bad." Several months before the murder, May Sidebottom destroyed her will, which included Sidebottom as a named beneficiary. Rick Alcorn, Sidebottom's neighbor, testified that Sidebottom said that he would kill his grandmother if this would get him into the Mafia.

Sidebottom and Shier arrived at May Sidebottom's house at approximately 1:45 a.m. Sidebottom got out of the car and told Shier not to wait for him. Shier then left in Sidebottom's car as instructed. The evidence indicated that someone had entered May Sidebottom's home after breaking the back door window. Sidebottom told police that he entered his grandmother's home after Shier had dropped him off, but he could not remember how he got in. Once inside, he demanded more money from his grandmother. She became angry and denied his request. Sidebottom stated that he then lost his temper and began beating his grandmother. He further stated that he struck her in the head and back with his fists and a chair until she stopped moving. He then started a fire in a bedroom and fled.

Police arrived at the burning house at approximately 2:35 a.m. They found May Sidebottom still alive but lying unconscious in a pool of blood in the kitchen. She had been brutally beaten, and she died shortly thereafter. Blood was splattered on the floors, walls, and ceiling in the kitchen, dining room, and living rooms. Pieces of a broken chair were found scattered on the floor. An autopsy revealed that May Sidebottom died of multiple injuries, particularly blunt force injury to the head and neck. She suffered a fractured cervical spine, fractured jaw, broken nose, five frontal rib fractures, and three back rib fractures.

The police interviewed Sidebottom as part of their investigation of the murder. During this initial interview, Sidebottom made several incriminating statements to the effect that he may have killed his grandmother. Following his arrest on October 9, 1985, Sidebottom confessed to the murder and recounted the events as described above.

Sidebottom was initially represented by appointed counsel, but he later retained private counsel, Joseph McMullin, to represent him. At trial, McMullin put forth no affirmative defense and called no witnesses. His primary defense tactic was to cross-examine the State's witnesses and criticize the State's evidence. Likewise, the defense presented no evidence during the penalty phase. Counsel presented no testimony from Sidebottom's family, although family members were available to testify.

The jury convicted Sidebottom of capital murder and sentenced him to death. The

Missouri Supreme Court affirmed the conviction and sentence on direct appeal. *State v. Sidebottom,* 753 S.W.2d 915 (Mo.) (en banc), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). Sidebottom attacked his conviction and sentence by filing a motion pursuant to Missouri Supreme Court Rule 29.15. Following a three-day evidentiary hearing, the motion was denied. The denial of the 29.15 motion was also affirmed by the Missouri Supreme Court. *Sidebottom v. State,* 781 S.W.2d 791 (Mo.1989) (en banc), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990).

On July 6, 1990, Sidebottom filed a pro se petition for a writ of habeas corpus in the United States District Court for the Western District of Missouri raising numerous grounds for relief. The district court appointed counsel to represent Sidebottom, and counsel then filed an amended petition. On May 24, 1993, the district court entered an order denying Sidebottom's petition. On June 8, 1993, pursuant to Fed.R.Civ.P. 59(e), Sidebottom filed a motion with the district court requesting that the court alter or amend its judgment or, in the alternative, to reconsider its order. On July 26, 1993, the district court issued an order denying Sidebottom's motion. Shortly thereafter, on August 10, 1993, the district court issued an order withdrawing its earlier order of July 26, 1993. The reason for this subsequent order was to allow Sidebottom's counsel to withdraw because she had been appointed as a state circuit judge and to allow replacement counsel to become familiar with the case. On October 15, 1993, the district court reissued its order of July 26, 1993, denying Sidebottom's Rule 59(e) motion. Sidebottom then filed a notice of appeal on November 12, 1993.

Meanwhile, sometime around June 13, 1993, Sidebottom filed a motion with the Missouri Supreme Court requesting that the court withdraw its mandate.[2] On July 23, 1993, Sidebottom filed a petition for a writ of habeas corpus with the Missouri Supreme Court under Mo.Sup.Ct.R. 91. On August 17, 1993, the Missouri Supreme Court summarily denied the habeas corpus petition and rejected the motion to recall the mandate.

On appeal to this court, Sidebottom argues that the district court erred in (1) denying his request for an evidentiary hearing; (2) rejecting his claims of ineffective assistance of post-conviction counsel; (3) rejecting his claims of ineffective assistance of trial counsel; (4) rejecting his claims of ineffective assistance of appellate counsel; (5) rejecting his claims of prosecutorial misconduct; (6) rejecting his claim of an incomplete and incompetent mental evaluation; and (7) denying various claims on procedural grounds.

## II.

■ Before addressing Sidebottom's claims, we must first consider the State's challenge to our jurisdiction over this appeal. The State contends that Sidebottom filed his notice of appeal outside the time limitation provided in Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

Rule 4(a)(1) of the Federal Rules of Appellate Procedure requires that a notice of appeal must be filed in the district court "within thirty days after the date of entry of the judgment or order appealed from." Upon a showing of excusable neglect, the district court may extend the time for filing a notice of appeal upon a motion filed not later than thirty days after expiration of the thirty-day period prescribed under Rule 4(a)(1). Fed.R.App.P. 4(a)(5). The time limits set forth in Rule 4 are "mandatory and jurisdictional." *Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978).

The State argues that Sidebottom's notice of appeal was due on August 25, 1993, thirty days after the district court's initial entry of its order on July 26, 1993, denying Sidebottom's Rule 59(e) motion. Thus, according to the State, Sidebottom's notice of appeal filed on November 12, 1993, is untimely because the district court had no authority under Rule 4(a)(5) to extend the time period for filing a notice of appeal beyond September 24, 1993. *See* Fed.R.App.P. 4(a)(1), (4), (5).

---

2. The motion was dated June 13, 1993, but the record does not reflect when it was actually filed.

■ Although Rule 4(a)(5) prohibits the district court from granting more than a thirty-day extension of time to file a notice of appeal, we have recognized that an appeal may be allowed under certain "unique circumstances." *Estle v. Country Mutual Insurance Co.*, 970 F.2d 476, 478 (8th Cir.1992) (quoting *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962) (per curiam)). " '[T]he unique circumstances exception to rule 4(a) protects a party who reasonably relied on erroneous district court action that caused the party to file an untimely notice of appeal.' " *Id.* (quoting *Hable v. Pairolero*, 915 F.2d 394, 395 (8th Cir. 1990)).

In this case, the district court did not expressly grant an extension under Rule 4(a)(5), nor did Sidebottom file a motion requesting an extension. Rather, the district court simply withdrew its initial order denying Sidebottom's Rule 59(e) motion and reissued it at a later date. Even if this *sua sponte* withdrawal order was improper—an issue we need not decide—the order "was entered when time remained to file a timely notice of appeal under Rule 4(a)(1)." *Id.* As a result, Sidebottom was "lulled into inactivity" by the district court's representation that it was allowing newly-appointed counsel to become familiar with the case and that it was taking the matter under advisement. The clear inference from the district court's action was that a timely notice of appeal could be filed after the district court reissued its order. *See id.* Sidebottom could not have been expected to file a notice of appeal from an order that had been withdrawn. Indeed, the effect of the district court's withdrawal of its earlier order was to reinstate the Rule 59(e) motion's status as a pending motion, and a notice of appeal filed at that point would have been a nullity. *Flieger v. Delo*, 16 F.3d 878, 882 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994). Given these unique circumstances, we conclude that Sidebottom's notice of appeal was timely and that we have jurisdiction over his appeal.

### III.

■ Sidebottom first argues that the district court should have held an evidentiary hearing on his claims concerning 1) prosecutorial misconduct; 2) ineffective assistance of counsel; 3) adequacy of the mental health evaluation; and 4) adequacy of procedural barriers to reviewing the merits of various claims.

Sidebottom's "brief fails, however, to go beyond [a] cursory and summary statement" of the need for an evidentiary hearing. *Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1212 (8th Cir.1993). Sidebottom raises four different claims—and fifty-eight specific instances of error underlying these claims—with this single argument, while providing little or no hint as to the nature of each asserted error.

■ Rule 28(a)(5) of the Federal Rules of Appellate Procedure provides that an appellant's brief shall include an argument containing "contentions . . . with respect to the issues presented, and the reasons therefor, with citations, statutes and parts of the record relied on." Fed.R.App.P. 28(a)(5); *see also Turner County, S.D. v. Miller*, 170 F.2d 820, 828 (8th Cir.1948). By failing to specify why any one or more of these grounds entitled him to an evidentiary hearing, Sidebottom has waived any right to have us consider his argument. *Primary Care Investors*, 986 F.2d at 1212.[3]

■ Even if we were to exercise our discretion to consider this claim, we would conclude that Sidebottom has failed to establish that he is entitled to an evidentiary hearing. Sidebottom was given an evidentiary hearing in state court on his post-conviction claims. To merit an evidentiary hearing in federal court, a habeas petitioner who has failed to develop evidence in state court must show cause and prejudice for that failure. *Keeney v. Tamayo–Reyes*, —— U.S. ——, ——–——, 112 S.Ct. 1715, 1719–21, 118 L.Ed.2d 318 (1992); *Parkus v. Delo*, 33 F.3d

---

**3.** In his statement of the case and within the argument sections of the brief, petitioner attempts to incorporate by reference various arguments made to the district court. This practice is prohibited under 8th Cir.R. 28A(j).

933, 938 (8th Cir.1994); *McKee v. Nix,* 995 F.2d 833, 835–36 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 565, 126 L.Ed.2d 465 (1993). Sidebottom has not demonstrated, or even attempted to demonstrate, cause and prejudice, nor has he shown that the denial of an evidentiary hearing would result in a fundamental miscarriage of justice. "There is no requirement of a hearing where the claim[s] [are] based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations." *Amos v. Minnesota,* 849 F.2d 1070, 1072 (8th Cir.), *cert. denied,* 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988). Accordingly, the district court did not err in denying an evidentiary hearing.

## IV.

Sidebottom next argues that the district court erred in rejecting his claims of ineffective assistance of post-conviction counsel. We disagree.

■ "[T]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). "Where there is no constitutional right to counsel there can be no right to effective assistance of counsel." *Pollard v. Delo,* 28 F.3d 887, 888 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 518, 130 L.Ed.2d 423 (1994). Nor can ineffective assistance of post-conviction counsel serve as cause for a petitioner's procedural default. *Id.*

■ Sidebottom attempts to avoid this reasoning by arguing that these principles should not apply to Missouri's post-conviction

proceedings. First, he contends that proceedings under Missouri Supreme Court Rule 29.15 are not, by definition, post-conviction in nature because Rule 29.15 generally requires post-conviction motions to be filed prior to the conclusion of the direct appeal process.[4] We agree with the district court, however, that although proceedings under Rule 29.15 may not truly be "post-final conviction," they clearly are a collateral attack upon a defendant's criminal conviction for which there is no right to effective assistance of counsel under the federal Constitution. We so held in *Lowe–Bey v. Groose,* 28 F.3d 816, 820 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 674, 130 L.Ed.2d 606 (1994).

■ Second, Sidebottom relies on *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), for the proposition that even though Missouri need not grant a prisoner access to counsel on post-conviction review, once it has done so, the Due Process Clause of the Fourteenth Amendment requires the State to ensure effective assistance of such counsel.[5] This argument, at least where, as here, petitioner is not totally deprived of the state-created right, has been rejected by the Supreme Court. *Pennsylvania v. Finley,* 481 U.S. 551, 558, 107 S.Ct. 1990, 1994–95, 95 L.Ed.2d 539 (1987). Accordingly, the district court did not err in rejecting Sidebottom's claims of ineffective assistance of post-conviction counsel, either as independent claims for habeas relief, or as cause for excusing any procedural default.

## V.

Sidebottom also contends that he was denied effective assistance of counsel at both

---

4. The effect of filing a Rule 29.15 motion is to suspend the direct appeal pending resolution of the issues raised by the motion. Rule 29.15(*l*) provides in part:

> If a motion is filed under this Rule 29.15 and an appeal is pending from the judgment of conviction that is the subject of the motion, the appeal shall be suspended until final determination of the issues raised by the motion.... If an appeal is filed from the judgment sustaining or overruling [the] motion ..., the appeal from the judgment of conviction shall be consolidated with the appeal from the judgment on the motion.

5. Rule 29.15(e) provides in part:

> When an indigent movant files a pro se motion, the court shall cause counsel to be appointed for the movant. Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds.

the guilt and penalty phases of his capital trial. The district court held that seventeen of the twenty-three specific instances of alleged ineffective assistance of trial counsel claims were procedurally barred. Sidebottom does not challenge that ruling. The remaining six claims that were preserved deal with 1) failure to investigate and present mental health evidence at the guilt and penalty phases of the trial; 2) failure to object to a "Prisoner Data Sheet"; and 3) failure to object to one of the jury instructions concerning aggravating circumstances.

█ In order to prevail on his ineffective assistance of counsel claims, Sidebottom must establish that counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance was deficient if it fell "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. In reviewing counsel's performance, we must apply an objective standard and " 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' ... while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." *Nave v. Delo,* 22 F.3d 802, 812 (8th Cir.1994), (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066), *cert. granted and judgment vacated,* —— U.S. ——, 115 S.Ct. 1086, 130 L.Ed.2d 1057 (1995). Counsel's performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [guilt and/or penalty] proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

█ An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the district court's factual findings for clear error and its legal conclusions *de novo. Wilkins v. Iowa,* 957 F.2d 537, 540 (8th Cir.1992).

## A.

█ Sidebottom first argues that he received ineffective assistance of trial counsel

due to counsel's failure to fully investigate evidence of mental disease or defect. In *Griffin v. Delo,* 33 F.3d 895 (8th Cir.1994), we noted that "[t]rial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary." *Id.* at 901. The reasonableness of failing to investigate or act "must be assessed in light of all [the] circumstances, and a significant degree of deference [must be] given to counsel and his or her professional judgment." *Id.*

Prior to trial, Sidebottom underwent a psychological evaluation at the Western Missouri Health Center. The evaluation was performed by Dr. Robijn Hornstra, a psychiatrist. In his report to the trial court, Dr. Hornstra concluded that 1) Sidebottom was not suffering from any mental disease or defect; 2) there was no history of mental disease or defect; 3) although there was evidence of alcohol or drug usage, there was no evidence of abnormal mental condition or mental retardation that would preclude the requisite state of mind for commission of the crime; and 4) Sidebottom was capable of assisting in his own defense.

Counsel testified at the 29.15 hearing that in preparing for trial, he reviewed the psychological report, met with Sidebottom on numerous occasions, and talked with members of Sidebottom's family. Neither Sidebottom nor any members of his family were able to provide any evidence to contradict the findings in the psychological report or provide other information concerning mental disease or defect. As a result, counsel determined that there was insufficient evidence upon which to present a defense of diminished capacity and that further investigation was unnecessary. Based on, *inter alia,* counsel's testimony and the results of the psychological report, the 29.15 court and the Missouri Supreme Court found, among other things, that counsel had conducted a reasonable investigation. Absent evidence to the contrary, we accord this factual finding a presumption of correctness under 28 U.S.C. § 2254(d).

Sidebottom now argues that counsel's investigative performance concerning the existence of mental disease or defect was defi-

cient. Specifically, Sidebottom contends that the psychiatric evaluation conducted by Dr. Hornstra was defective because it did not include the administration of various standardized testing procedures to determine the existence of brain disease. In support of this argument, Sidebottom relies on the report of Dr. O'Connor, a psychologist, who conducted a second evaluation more than two years after the·evaluation performed by Dr. Hornstra. Dr. O'Connor's report did not differ substantially from that of Dr. Hornstra. Dr. O'Connor did conclude, however, that Sidebottom suffers from the mental disease or defect of intermittent explosive disorder and that it is "highly probable" that Sidebottom suffered from some degree of lack of capacity at the time of the murder. Dr. O'Connor further concluded that without standardized testing, the level of IQ and cognitive efficiency cannot be ascertained. Thus, Sidebottom argues, counsel was ineffective for relying on Dr. Hornstra's allegedly incomplete evaluation.

The problem with Sidebottom's argument is that his criticism is not so much directed at his counsel, but rather at the examining psychiatrist, Dr. Hornstra. Indeed, Sidebottom has expended considerable effort in articulating what he perceives to be the appropriate methods for conducting an adequate psychological evaluation and criticizing Dr. Hornstra for failing to apply those methods. Notwithstanding any error on Dr. Hornstra's part, Sidebottom must still meet the heavy burden of establishing that counsel acted unreasonably in relying on the results of the psychological evaluation as a basis for terminating further investigation. Having reviewed the record, we agree with the district court that Sidebottom has not met that burden and that counsel's investigative performance did not fall to the level of constitution- · ally ineffective assistance.

Sidebottom's after-the-fact claim is similar to the argument that we recently rejected in *O'Neal v. Delo,* 44 F.3d 655 (8th Cir.1995). There, petitioner underwent a mental evaluation prior to trial and was found to be free of psychotic illness at the time of the murder. He was also capable of understanding the charges against him and the consequences of

conviction, and he was found capable of assisting in his own defense. The examining psychiatrist recommended, however, that petitioner receive additional testing to rule out the unlikely possibility of brain disease. The trial court denied petitioner's motion to obtain the second examination. Nevertheless, petitioner argued that counsel was ineffective in failing to do whatever was necessary to secure an additional psychological evaluation. In finding that counsel's decision not to pursue a second evaluation was reasonable, we noted that "[t]here [was] no evidence in the record that [petitioner] exhibited any behavior or other indicia of an abnormal mental state such that counsel could not reasonably decide to proceed without further psychiatric testing." *O'Neal,* 44 F.3d at 660.

And so it is here. Counsel reviewed a mental health report that clearly indicated that Sidebottom did not suffer from any mental disease or defect and had no history of mental abnormality. Counsel was fully aware of Sidebottom's personal and family history, and neither Sidebottom nor any of his family members were able to provide any evidence to the contrary. As a result, counsel made the reasonable decision that further investigation of psychological evidence was unnecessary. "[W]e have never suggested [that] counsel must continue looking for experts just because the one he has consulted gave an unfavorable opinion," *Dees v. Caspiri,* 904 F.2d 452, 454 (8th Cir.) (per curiam), *cert. denied,* 498 U.S. 970, 111 S.Ct. 436, 112 L.Ed.2d 419 (1990), and we decline to depart from that principle today merely on the basis of Sidebottom's after-the-fact diagnosis. "The mere fact that [Sidebottom's] counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance." *Poyner v. Murray,* 964 F.2d 1404, 1419 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). Accordingly, we hold that Sidebottom has failed to establish "that his counsel's decision not to pursue a second psychiatric examination ... was professionally unreasonable so as to render

counsel constitutionally ineffective." *O'Neal,* 44 F.3d at 660.

## B.

■ Sidebottom also contends that counsel acted unreasonably in failing to present any mitigating evidence during the penalty phase of the trial. Sidebottom first argues that counsel should have presented evidence concerning the effect that consumption of chemical substances may have had on Sidebottom on the night of the murder as well as the effect of Sidebottom's long-term use of alcohol and drugs.

We reject this argument, for it is clearly a product of hindsight, and it fails to take into account the facts reasonably relied upon by counsel at the time. Counsel was aware of Sidebottom's prior use of alcohol and drugs, including the amount of alcohol and drugs consumed by Sidebottom prior to the murder. Counsel testified at the 29.15 hearing that he had rejected a defense based on alcohol or drug usage because Sidebottom had told him that, although he was intoxicated on the night of the murder, he was aware of what was going on. We therefore decline to second-guess counsel's decision not to present Sidebottom's use of alcohol and drugs as mitigation evidence.

■ Sidebottom next argues that counsel was ineffective for failing to call family members to testify concerning Sidebottom's abusive home life. Counsel testified at the 29.15 hearing that he was concerned that presenting such evidence would have elicited damaging information on cross-examination regarding Sidebottom's character, the most damning of which would have revealed that Sidebottom had previously raped the victim. On these facts, we find that counsel's strategic decision not to present such testimony was not professionally unreasonable. Indeed, we would be hard-pressed to envision a case with more potential for disastrous consequences than a situation where a capital jury is informed that the defendant had previously raped the victim, particularly where that victim was the defendant's own grandmother.

■ Finally, Sidebottom contends that counsel was deficient in failing to investigate and present evidence of Sidebottom's school, work, and military records. Sidebottom argues that these records would have provided additional evidence of mental impairment. As we have already held, however, based on his review of the mental evaluation and his perception of Sidebottom's demeanor, counsel made the reasonable decision that further investigation of mental disease or defect was unnecessary. Had counsel obtained these records, they would have revealed that Sidebottom had a poor school record and a history of frequent job changes, and that he had been AWOL in the military and received an "other than honorable discharge." Such information could just as easily have been perceived by the jury as aggravating. Accordingly, we reject Sidebottom's argument that counsel was deficient in failing to present those records.

## C.

We conclude that the absence of evidence concerning any mental disease, defect or extreme disturbance suffered by Sidebottom, coupled with counsel's legitimate concern of exposing what clearly would have been damaging information, distinguishes this case from previous cases in which we have held that a failure to investigate and/or present evidence of mental disease or defect was both unreasonable and prejudicial. *See, e.g., Hill v. Lockhart,* 28 F.3d 832 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 778, 130 L.Ed.2d 673 (U.S. 1995); *Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991); *Thomas v. Lockhart,* 738 F.2d 304 (8th Cir.1984). Accordingly, we agree with the district court and the Missouri state courts that counsel performed a reasonable investigation and, after conferring with Sidebottom, made a strategic decision not to present a psychological defense or mitigating evidence. We have previously found that similar decisions do not constitute ineffective assistance of counsel. *See, e.g., Whitmore v. Lockhart,* 8 F.3d 614 (8th Cir.1993); *Laws v. Armontrout,* 863 F.2d 1377 (8th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989); *Wilkins v. Iowa,* 957 F.2d 537, 540 (8th Cir.1992). Be-

cause we conclude that trial counsel was not ineffective, we do not reach the prejudice prong of the ineffective assistance of counsel analysis.

### D.

■ Sidebottom argues that he was denied effective assistance of trial counsel because counsel did not object or move for a mistrial after discovering that a "Prisoner Data Sheet" had been inadvertently submitted to the jury during deliberations. This form incorrectly stated that Sidebottom had either been charged with or committed the crimes of rape or burglary. Shortly after receiving the form, the jury sent a note to the trial judge asking if Sidebottom "had been convicted of rape + burglary or had just been charged which does not constitute guilt." After conferring with the trial court and the prosecution, trial counsel determined that the proper remedy was a curative instruction. Sidebottom contends that counsel's decision not to request a mistrial was unreasonable.

On direct appeal, the Missouri Supreme Court found that counsel's failure to request, and the trial court's failure to grant, a mistrial did not constitute plain error. *State v. Sidebottom*, 753 S.W.2d at 921. After noting that there was no contention at trial that the information regarding the rape and burglary was related to the murder, the court reasoned that any error did not so substantially affect Sidebottom's rights that a manifest injustice or miscarriage of justice resulted from this admittedly inadmissible evidence. *Id.* at 920–21.

"Federal habeas corpus relief does not lie for errors of state law." *McKee*, 995 F.2d at 836. "The admissibility of evidence is a question of state law that does not raise a federal issue unless admitting the evidence infringes specific constitutional protections or is so prejudicial that it amounts to a denial of due process." *Foster v. Delo*, 39 F.3d 873, 882 (8th Cir.1994) (en banc). Sidebottom argues that admission of the form violated his right to due process. We disagree, for, after discovering the error, the trial court promptly issued a curative instruction and the prosecution made no attempt to capitalize on the erroneous information. Accordingly, we cannot say that admission of the Prisoner Data Sheet was so prejudicial that it violated Sidebottom's due process rights or that counsel was constitutionally ineffective for failing to object or to request a mistrial.

### E.

■ Sidebottom next argues that counsel was ineffective for failing to object to the aggravating circumstance instruction that required the jury to determine "whether the murder of May Sidebottom involved depravity of mind and as a result thereof it was outrageously or wantonly vile, horrible or inhuman." Sidebottom contends that this instruction is unconstitutionally vague and overbroad, and that counsel's failure to object was unreasonable.

We have held that "a statutory aggravating circumstance requiring that the murder involve 'depravity of mind' without further definition of the phrase violates the Eighth Amendment because it does not sufficiently limit the pool of persons convicted of murder who would be eligible for the death penalty." *Battle v. Delo*, 19 F.3d 1547, 1562 (8th Cir. 1994); *see also Mathenia v. Delo*, 975 F.2d 444, 449 (8th Cir.1992), *cert. denied*, ⎯ U.S. ⎯, 113 S.Ct. 1609, 123 L.Ed.2d 170 (1993); *Newlon v. Armontrout*, 885 F.2d 1328, 1334 (8th Cir.1989), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); *Smith v. Armontrout*, 888 F.2d 530, 538 (8th Cir.1989). Nevertheless, " 'some kind of torture or serious physical abuse is a sufficient limiting construction' to save an aggravating circumstance instruction." *Battle*, 19 F.3d at 1562 (quoting *Maynard v. Cartwright*, 486 U.S. 356, 362–64, 108 S.Ct. 1853, 1858–59, 100 L.Ed.2d 372 (1988)). The problem in this case, however, is that the instruction given to the jury did not include the limiting elements of torture or serious physical abuse, nor did the jury make a finding that either of those elements existed in reaching its verdict at the penalty phase of the trial. Thus, because of the absence of a clear, limiting directive, the "depravity of mind" instruction did not sufficiently channel the sentencer's discretion. *Newlon*, 885 F.2d at 1334; *Smith*, 888 F.2d at 538.

However, the presence of an invalid aggravating circumstance does not end the inquiry. Under Missouri's death penalty law, the sentencer is required to find only one of certain enumerated aggravating circumstances. Mo. Rev.Stat. § 565.032.1(1) (Supp.1993). In this case, the jury found a second aggravating circumstance, namely, "[that] the defendant was convicted of sexual abuse in the first degree on July 17, 1986." The Missouri Supreme Court has held that "[w]hen a 'jury finds two or more aggravating circumstances, "the failure of one circumstance[ ] does not taint the proceedings so as to invalidate the other aggravating circumstance found and the sentence of death thereon."'" *State v. Sidebottom,* 781 S.W.2d at 799 (quoting *State v. Malone,* 694 S.W.2d 723, 728 (Mo.1985) (en banc), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986)). Because Missouri is a non-weighing state, *LaRette v. Delo,* 44 F.3d 681, 687 n. 4 (8th Cir.1995), the existence in this case of the second aggravating factor also precludes the tainting of the conviction and sentence as a matter of federal constitutional law. *Zant v. Stephens,* 462 U.S. 862, 890, 103 S.Ct. 2733, 2749–50, 77 L.Ed.2d 235 (1983).

We conclude that any error resulting from the invalid aggravating circumstance was harmless. In *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Supreme Court held that a state appellate court may cure this type of sentencing error by conducting a harmless error analysis. *Id.* at 752–53, 110 S.Ct. at 1450–51. Although the Missouri Supreme Court did not apply a harmless error analysis on direct appeal, we have recently held that a federal court on collateral review may "apply the *Chapman [v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] harmless error standard in the first instance and consider whether the constitutional error ... is harmless beyond a reasonable doubt." *Williams v. Clarke,* 40 F.3d 1529, 1541 (8th Cir.1994). To make that determination, we review the record *de novo* and ask "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* (citation and quotation omitted). More precisely, we inquire "whether the sentencer actually rested its decision to impose the death penalty on the valid evidence and the constitutional aggravating factors, independently of the vague factor considered." *Id.*

As noted above, the jury in this case found the additional aggravating factor that Sidebottom had previously committed a sexual assault. The victim of that assault testified at the penalty phase of Sidebottom's trial, describing in detail the vicious nature of the attack upon her, in which Sidebottom, while armed with a gun, choked her into unconsciousness before sodomizing her. Given the viciousness of the additional aggravating factor and the fact that we can discern no evidence in the record of mitigating circumstances, statutory or otherwise, we conclude that the additional aggravating factor was so " 'overwhelming' that the decision would have been the same even absent the invalid factor." *Williams,* 40 F.3d at 1541. Therefore, after carefully reviewing the record, we are convinced beyond a reasonable doubt that Sidebottom's sentence would have been the same even absent the constitutionally inadequate instruction defining the other aggravating circumstance. Accordingly, counsel's failure to object to the depravity of mind instruction had no effect on the ultimate result of the penalty phase of the trial.

## VI.

In his amended federal habeas petition, Sidebottom alleged ten specific instances of ineffective assistance of appellate counsel due to counsel's failure to raise or fully discuss certain issues. Sidebottom contends that the district court erred both in rejecting these claims as procedurally barred and on the merits. Under Missouri law, Sidebottom properly raised these claims in his motion to recall the mandate filed with the Missouri Supreme Court. *E.g. Nave v. Delo,* 22 F.3d at 808–09. The State concedes this point. Therefore, the district court erred in finding that these claims were procedurally defaulted. *See Hall v. Delo,* 41 F.3d 1248 (8th Cir.1994) (holding that district court erred in concluding that petitioner's claim of ineffective assistance of appellate counsel was pro-

cedurally barred even though it was raised in a motion to recall the mandate). This error was inconsequential, however, because the district court also rejected Sidebottom's claims on the merits. We agree with that part of the district court's conclusion.

Although Sidebottom is correct in asserting that his claims of ineffective assistance of appellate counsel were preserved for federal collateral review, he has wholly failed to develop any arguments on the merits in his brief. "We have generally held that a party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *Hatley v. Lockhart,* 990 F.2d 1070, 1073 (8th Cir.1993). However, because this is a death penalty case, and because this is Sidebottom's first federal habeas petition, we have exercised our discretion to consider the arguments raised in Sidebottom's habeas petition. Only four of these claims merit discussion.

### A.

■ Sidebottom first argues that appellate counsel was ineffective for failing to object to the aggravating circumstance instruction that required the jury to determine whether "the offense was committed by a person who has one or more serious assaultive criminal convictions." At the time of his trial in this case, Sidebottom had already pleaded guilty to first degree sexual assault. After his release on bail on that charge, Sidebottom committed the murder that gave rise to this prosecution. A formal adjudication of guilt for the sexual assault offense, however, was not rendered by the state court until after the murder. Sidebottom contends that it was improper to use this conviction as a prior assaultive conviction because he had not yet been adjudicated guilty at the time of the murder. Thus, he argues, because the formal date of the assaultive conviction occurred after the date of May Sidebottom's murder, use of that conviction as an aggravating circumstance violated the Eighth Amendment's ban on cruel and unusual punishment. We do not agree.

Sidebottom relies upon *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), as support for his argument. In *Johnson,* the Court held that the death penalty may not be imposed when it is based in part on an extraneous offense that is vacated subsequent to the capital trial. *Id.* at 590, 108 S.Ct. at 1988–89. The Court found that imposing the death penalty under such circumstances violated the principle that "such decisions cannot be predicated on mere 'caprice' or on 'factors that are constitutionally impermissible or totally irrelevant to the sentencing process.'" *Id.* at 585, 108 S.Ct. at 1986 (quoting *Zant v. Stephens,* 462 U.S. 862, 884–85, 887 n. 24, 103 S.Ct. 2733, 2746–47, 2748 n. 24, 77 L.Ed.2d 235 (1983)).

Here, unlike in *Johnson,* the jury was not allowed to consider evidence that was "materially inaccurate[,]" *id.* at 590, 108 S.Ct. at 1988–89 because there has been no subsequent invalidation of Sidebottom's prior conviction. Moreover, Sidebottom cannot dispute that although the trial court's formal adjudication of guilt on the sexual assault charge did not occur until after the murder, there still existed, at the time of sentencing for the murder, an unrefuted factual determination based upon Sidebottom's guilty plea, that Sidebottom had previously committed the sexual assault. We therefore hold that admission of the sexual assault conviction as an aggravating circumstance was not violative of Sidebottom's Eighth Amendment rights and that appellate counsel was not ineffective for failing to raise this claim.

### B.

■ Sidebottom contends that appellate counsel was ineffective in failing to adequately challenge the admissibility of statements made to police prior to and following Sidebottom's arrest. Sidebottom argues that his mental condition precluded him from giving voluntary statements to the police and that appellate counsel's performance was ineffective in failing to fully advance this issue on direct appeal.

Sidebottom's argument is foreclosed by the Supreme Court's decision in *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). There, the Court held that "coercive police activity is a necessary predicate to [a] finding that a confession is not 'voluntary'

within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 521. We have interpreted *Connelly* to mean that the "personal characteristics of the defendant are constitutionally irrelevant absent proof of 'coercion brought to bear on the defendant by the State.'" *United States v. Rohrbach,* 813 F.2d 142, 144 (8th Cir.) (quoting *Connelly,* 479 U.S. at 167, 107 S.Ct. at 521), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987). Because Sidebottom has failed to prove, or even allege, that the police officers' conduct was coercive, we reject his argument that his incriminating statements were involuntary. Consequently, appellate counsel's performance was not deficient in failing to raise this claim.

### C.

█ Sidebottom argues that appellate counsel was ineffective in attacking the sufficiency of the evidence for capital murder. He contends that counsel failed to argue that the evidence was insufficient to establish deliberation.

Our review of this claim is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "[A] federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. at 2793.

The elements of state-law crimes are defined by state law. *Flieger,* 16 F.3d at 883. Under Missouri law, "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev.Stat. § 565.020.1 (Supp.1993). Missouri law provides that "[a] person acts knowingly ... [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." *Id.*

§ 562.016.3 (1986). Missouri law further provides that "[d]eliberation means cool reflection for any length of time no matter how brief." *Id.* § 565.002(3). "The jury may infer these elements from indirect evidence and the circumstances surrounding the murder." *Flieger,* 16 F.3d at 883 (citations omitted).

Our review of the record satisfies us that the evidence presented at trial was constitutionally sufficient. In reviewing this claim on direct appeal, the Missouri Supreme Court found that Sidebottom's "confession and the testimony of many witnesses, especially those to whom [Sidebottom] made statements about killing his grandmother prior to the murder," were sufficient to support Sidebottom's conviction. *State v. Sidebottom,* 753 S.W.2d at 925. We agree with this reasoning and likewise hold that there was more than sufficient evidence for a rational jury to convict Sidebottom of capital murder. Accordingly, appellate counsel was not ineffective in failing to advance this claim.

### D.

█ Sidebottom next argues that appellate counsel was ineffective for failing to challenge various statements made by the prosecutor concerning defense counsel's failure to present any evidence. Sidebottom contends that these statements amounted to an impermissible comment on his failure to testify.

During closing argument, the prosecutor stated:

> What do you do when you don't have any evidence? ... Mr. McMullin said he was going to put on evidence in his opening statement and he didn't do that. So you can throw out everything he said in his opening statement, because he didn't put on any evidence.
>
> ... What do you do when you don't have a defense, when your client confesses to not one but two distinguished and dedicated police officers of the Independence, Missouri Police Department?
>
> ....
>
> The State's evidence in this case is uncontroverted. We've brought you all of

these witnesses and we've proved our case. I'd like for you folks to think about these things I've said to you.... [U]se your common sense and your reason when listening to his argument.

And remember, when you don't have a defense you try to pick at the little things and you try to say that the police coerced the confession. The man is clearly, clearly, folks, guilty of murder in the first degree....

. . . .

He did it. He confessed to it. What do you expect him to do? He's not going—what do you expect him to do? He did it.

Trial counsel did not object to these statements at trial or in a motion for a new trial. On direct appeal, the Missouri Supreme Court reviewed many of these statements for plain error and rejected Sidebottom's claim of prosecutorial misconduct. We likewise review the prosecutor's comments for plain error. *Pollard,* 28 F.3d at 890.

■■■ It is well established that direct comments by a prosecutor on a defendant's failure to testify violate the defendant's Fifth Amendment privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Indirect references to a defendant's failure to testify are also prohibited if they either "(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally have understood them as a comment on defendant's failure to testify." *Pollard,* 28 F.3d at 890.

■■■ We are unpersuaded that the prosecutor's comments constituted plain error. Rather than constituting an impermissible reference to Sidebottom's failure to testify, the prosecutor's comments referred to defense counsel's failure to present any evidence. The prosecution may comment on the defense's failure to present evidence to contradict the State's case "unless the defendant alone had the information to do so." *Richards v. Solem,* 693 F.2d 760, 766 (1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983); *see also Griffin,* 33 F.3d at 906 (prosecutor's statement construed as "what was the defendant's evidence" was not

improper). The strategy indicated by defense counsel during his opening statement that Sidebottom did not commit the murder and that his confession was the product of police coercion "is not of a nature that exculpatory information would be exclusively in the defendant's possession." *Richards,* 693 F.2d at 766. Accordingly, we conclude that the prosecutor's statements were not a comment on Sidebottom's failure to testify and that appellate counsel was not constitutionally ineffective in challenging these statements.

### E.

■■■ We have reviewed Sidebottom's remaining claims of ineffective assistance of appellate counsel and find them to be without merit. The Constitution does not require appellate counsel to raise every nonfrivolous argument on appeal. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983). Moreover, Sidebottom has failed to establish that he would have been likely to prevail had counsel advanced these additional claims. Absent contrary evidence, we conclude that appellate counsel was exercising sound appellate strategy in the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). Accordingly, the district court did not err in rejecting Sidebottom's remaining claims of ineffectiveness of appellate counsel.

### VII.

■■■ Petitioner asserts four instances of prosecutorial misconduct as independent claims for habeas relief. The district court held that these claims were procedurally barred because they were not presented in the direct appeal or post-conviction proceeding. The district court also rejected them on the merits.

Our review of the record confirms the district court's conclusion that Sidebottom did not raise these claims in state court. Therefore, federal habeas review of Sidebottom's procedurally defaulted claims is barred unless he "can demonstrate cause for the de-

fault and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Sidebottom has failed to invoke either exception to the procedural-bar doctrine. Instead, he has merely proceeded to argue these claims on the merits. This he may not do. Because Sidebottom failed to properly assert these claims in his direct appeal or state post-conviction proceeding, we conclude that they are defaulted. In any event, we perceive no error in the district court's decision with respect to these claims.

The only claim that arguably was preserved is Sidebottom's contention that the prosecutor improperly made reference to Sidebottom's failure to testify. We have already rejected this contention as an underlying claim of ineffective assistance of appellate counsel. Accordingly, we affirm the district court's refusal to grant relief based on Sidebottom's claims of prosecutorial misconduct.

## VIII.

■ Sidebottom next argues that he was denied a fair trial because he did not receive a complete and competent mental examination as required under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Once again, Sidebottom failed to present this claim to the Missouri courts. He has not demonstrated cause and prejudice for his failure to do so, nor has he shown that it would constitute a fundamental miscarriage of justice to deny this claim on procedural grounds. As a result, it is barred.

## IX.

Sidebottom argues that the district court erred in concluding that his claims regarding additional instructional errors were procedurally barred. These claims involved challenges to Missouri's instructions on reasonable doubt and mitigating circumstances.

We need not address Sidebottom's disagreement with the district court's application of the procedural-bar doctrine because these claims may be readily disposed of on

the merits. In *Murray v. Delo,* 34 F.3d 1367, 1382 (8th Cir.1994), we held that petitioner's challenge to the Missouri reasonable doubt instruction was barred by the new-rule doctrine articulated in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In addition, we have consistently rejected claims that Missouri's mitigating circumstances instruction impermissibly requires a finding of unanimity. *E.g. Murray,* 34 F.3d at 1381; *Battle,* 19 F.3d at 1562; *Smith,* 888 F.2d at 545.

## X.

■ Finally, Sidebottom's perfunctory due process challenge to the admission of other evidence at trial does not properly bring this claim before us. *See Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir.1994) ("perfunctory reference to due process without discussion does not bring the issue before this court"). Even if we were to address this argument, we would find that it is without merit.

The district court's order denying the petition for a writ of habeas corpus is affirmed.